Filed 4/30/13

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Petitioner,<br><br>      v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,<br><br>      Respondent.<br>_____<br>STEVEN JOSEPH KAULICK,<br><br>      Real Party in Interest. | B246632<br><br>(Los Angeles County<br>Super. Ct. No. PA034177) |


ORIGINAL PROCEEDINGS in mandate.  Cynthia Ulfig, Judge.  Petition granted with directions.

Jackie Lacey, District Attorney of Los Angeles County; Irene T. Wakabayashi, Head Deputy District Attorney, Roberta T. Schwartz, Beth L. Widmark and Phyllis C. Asayama, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

California Appellate Project, Jonathan D. Steiner, Executive Director, Richard B. Lennon, Suzan E. Hier and Cheryl A. Lutz, Staff Attorneys, for Real Party in Interest, Stephen Joseph Kaulick.

On November 6, 2012, voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the Act). Under the "three strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) as it existed prior to Proposition 36, a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. Under the Act, however, a defendant convicted of two prior serious or violent felonies is subject to the 25-years-to-life sentence only if the third felony is *itself* a serious or violent felony.[1] If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second-strike, rather than a third-strike, offender. The Act also provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction. According to the specific language of the Act, however, a current inmate is not entitled to resentencing if it would pose an unreasonable risk of danger to public safety.

In the instant matter, shortly after the Act went into effect, real party in interest Steven Kaulick, an inmate serving a 25-years-to-life term for a felony conviction which was not a serious or violent felony, filed a petition for habeas corpus seeking resentencing under the Act. The trial court judge hearing the petition granted it, without notice to the prosecution, without giving the prosecution an opportunity to establish that resentencing would pose an unreasonable risk of danger to public safety, and without

---

[1] There are certain exceptions to this rule, discussed in footnote 11, *post*.

2

holding a hearing. When the District Attorney of Los Angeles County (District Attorney) became aware of Kaulick's petition and the trial court's order, the District Attorney obtained an immediate stay of execution of the resentencing order and filed a petition for writ of mandate with this court challenging that order. We issued an order to show cause and now grant the writ petition. The trial court should not have granted Kaulick's petition for resentencing under the Act without insuring that the District Attorney had received notice and an opportunity to be heard on the issue of dangerousness. In the course of granting the writ petition, we will discuss several issues likely to arise on remand, including the prosecution's burden of proof on the issue of dangerousness.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Instant Offense*

On September 4, 1999, 18-year-old Barbara S. was outside her apartment when she heard Kaulick in his apartment screaming on the telephone. Barbara S. later asked if she could help Kaulick. He told her that he was moving and, at his request, Barbara S. began helping him remove property from his apartment. Kaulick told Barbara S. that his wife was divorcing him and he would not see his daughter again. He was upset and angry. When Barbara S. was inside Kaulick's apartment, he closed the door, tore her blouse, and placed his hand over her mouth. Kaulick choked her and told her to shut up. Barbara S. attempted to flee, but Kaulick grabbed her by the hair, continued choking her, and told her that he would kill her. Kaulick then dragged Barbara S. to his bed, threw her on it, and straddled her. He ordered her to remove her clothes and unbuckled his belt. Barbara S. kicked Kaulick between his legs and fled; she was naked from the waist up.

3

Barbara S. called the police, as did neighbors who had heard her screams. Police ultimately recovered Barbara S.'s torn blouse from Kaulick's apartment. (*People v. Kaulick* (July 12, 2001, B141026) [nonpub. opn.], pp. 2-3.)

On November 19, 1999, Kaulick was charged by information with three counts: (1) false imprisonment by violence (Pen. Code, § 236); (2) assault with intent to commit rape or other enumerated offense (Pen. Code, § 220); and (3) criminal threats (Pen. Code, § 422). While the latter two offenses are serious or violent felonies (Pen. Code, §§ 667.5, subd. (c)(15), 1192.7, subd. (c)(29), (38)), the first charged offense is not.[2] Kaulick was also alleged to have suffered two prior serious or violent felony convictions within the meaning of the three strikes law,[3] one prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)), and two prior prison terms (Pen. Code, § 667.5, subd. (b)).

---

[2]    False imprisonment is defined by Penal Code section 236, but the statute contains no penalty provision. Penal Code section 237, subdivision (a) provides that false imprisonment is punishable by a fine or a jail term; it further provides that if the false imprisonment was "effected by violence, menace, fraud, or deceit," it is punishable by imprisonment. In this case, the record indicates that the jury found defendant guilty of "the crime of false imprisonment with violence, menace, fraud or deceit." It is thus not clear whether the jury concluded defendant had used violence. False imprisonment by violence may constitute a serious or violent felony if, for example, the defendant personally used a dangerous or deadly weapon. (Pen. Code, § 1192.7, subd. (c)(23).)

[3]    Kaulick's prior strikes arose from a case in which he kidnapped his parents at gunpoint in 1989. According to the preliminary hearing transcript from that case, Kaulick arrived drunk at the motor home where his parents lived. His father owned several guns, which he kept in a locked outside compartment of the motor home. Kaulick demanded one of the guns; when his father refused, Kaulick punched him repeatedly, strangled him, and threatened to kill him. When Kaulick's father could endure no more, he yielded and unlocked the gun compartment. Kaulick then loaded the gun and drove the motor home away with his parents inside. Kaulick told his parents to not even think about escaping. Kaulick made several stops, including multiple stops for beer, which he drank. He eventually took his parents back, demanded money, and drove off in the motor

4

2. *Conviction and Sentencing*

The case proceeded to a jury trial in early 2000. Kaulick was convicted of count one; the jury was hopelessly deadlocked on the remaining counts and the court declared a mistrial. At a bench trial, the trial court found all alleged prior conviction and prison term allegations true.

Kaulick moved to strike one or both of his prior strike convictions. The trial court denied the motion, stating, " '[w]ell, the way I look at Mr. Kaulick, he's a danger to himself, he is a danger to society. He is waiting to explode at the drop of a hat, or anything that could provoke him. [¶] I don't have a clue as to what might have provoked him to attack the victim in the current case, but she escaped by the skin of her teeth. It's fortunate that she wasn't raped. It's fortunate that she wasn't more seriously injured.' " (*People v. Kaulick* (July 12, 2001, B141026) [nonpub. opn.], p. 15.) The court went on to state, " '[t]his is a dangerous individual, and in exercising my discretion on whether to strike a strike, I am guided by the law which targets recidivists. [¶] He's a recidivist. He doesn't have a large number of convictions, but given the nature of those convictions, the fact that when he was sent to prison out of Ventura County Superior Court he was violated on parole any number of times, and he hasn't learned a thing. [¶] He is waiting to explode, and he's a person that should be confined for as long as humanly possible. So I am not going to strike a strike in this case.' " (*Ibid.*)

---

home, allowing his parents to remove some of their clothing from the motor home before they were abandoned. Kaulick's mother testified in his defense at the preliminary hearing, but, she, too, agreed that she had been afraid that Kaulick might kill her and her husband.

As Kaulick was convicted of a felony (Pen. Code, § 236) and had two prior serious or violent felony convictions within the meaning of the three strikes law, he was sentenced under the three strikes law to a term of 25 years to life. He received an additional one year in prison for a prior prison term.

The remaining two counts, on which a mistrial had been declared, were dismissed on the motion of the prosecution, in the interests of justice (Pen. Code, § 1385). It cannot be determined from the record whether the prosecution requested dismissal of the remaining counts because it believed it could not prove them at a retrial, or because it believed, as Kaulick was already receiving a third strike sentence, that it was unnecessary to pursue them further.

3.    *Appeal*

Kaulick appealed his conviction; we affirmed. In response to Kaulick's argument that the trial court abused its discretion in failing to strike one of his prior strike convictions, we stated that, not only did the court not abuse its discretion, "on this record, the granting of [Kaulick]'s request to strike would have been an abuse of discretion." (*People v. Kaulick* (July 12, 2001, B141026) [nonpub. opn.], p. 16.)

4.    *Kaulick's Petition for Relief Under the Act*

Some 12 years after Kaulick's sentencing, the electorate passed Proposition 36. On December 21, 2012, Kaulick filed a petition for habeas corpus which was, in effect, a request for resentencing under the Act. The petition was served on the Attorney General; no service was made on the District Attorney.

In Kaulick's petition, he argued that, under the Act, he was entitled to be resentenced to a second strike sentence, as his third felony conviction was not a serious or violent felony. To the extent he impliedly addressed the issue of his dangerousness, Kaulick stated that his instant conviction arose out of an incident where he "grabb[ed] Barbara S. in his apartment in an attempt to retrieve his gold neck[lace] which Barbara S. had stolen from [him]." He stated that his prior conviction was "a single act of aberrant behavior," a "family dispute which went awry and whereby [he] naively accepted a plea-bargain." He also attached two letters from his parents which had sought leniency in connection with his initial sentencing in the instant case. He submitted no evidence whatsoever relating to his behavior in the intervening 12 years or his current risk of dangerousness.[4]

5.    *The Trial Court's Ruling*

A motion for resentencing under the Act should be submitted to the trial court that entered the judgment of conviction. (Pen. Code, § 1170.126, subd. (b).) If the court that originally sentenced the movant is unavailable, the presiding judge shall designate another judge to rule on the movant's motion. (Pen. Code, § 1170.126, subd. (j).) In the

[4]    Kaulick did, however, note that he was now 54 years old.

7

instant case, the judge who originally sentenced Kaulick is deceased. The supervising judge of the North Valley District assigned Judge Cynthia Ulfig to rule on Kaulick's motion.[5]

On December 31, 2012, Judge Ulfig granted Kaulick's petition. The order granting the petition states, "In the petition for recall of the sentence the defendant included a number of exhibits. The Court reviewed the exhibits, as well as, the court file. Having reviewed all the documents the Court is now satisfied that it is appropriate to recall and modify the sentence." The court resentenced Kaulick as though he had only one prior strike conviction. He was sentenced to the upper term of three years, doubled, plus one year for the prior prison term. As he had already served more than this seven-year term,[6] he would be entitled to an immediate release from prison.

---

[5]     The District Attorney does not argue that it was error for the supervising judge, rather than the presiding judge, to assign a judge to hear Kaulick's petition. According to the District Attorney, however, shortly after the Act was passed, a different judge, William Ryan, had been assigned to handle all petitions for resentencing in Los Angeles County. It appears that the assignment of Kaulick's petition to Judge Ulfig, rather than Judge Ryan, was the result of either: (1) a miscommunication to the district courthouses of Judge Ryan's assignment; or (2) a failure to recognize that Kaulick's petition for habeas corpus was, in fact, a petition for resentencing under the Act.

[6]     While it is not relevant to our resolution of the petition, we note that the trial court recalculated Kaulick's custody credits as 4,859 (over 13 years) actual days of credit, plus 2,428 days of conduct credit. As we shall discuss, Kaulick's sentence was *modified*; his sentence was not vacated for new sentencing. As such, the trial court should have recalculated his actual time in custody, but not custody credits. Kaulick was in the custody of the Department of Corrections for the intervening years; he was not entitled to additional presentence conduct credits. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.) As the trial court believed Kaulick should have been sentenced to a second strike term, he would have been entitled to, at most, conduct credits at a rate of 20% (Pen. Code, § 1170.12, subd. (a)(5)), not the nearly 50% rate at which the court awarded credits.

6. *The District Attorney Responds*

On January 31, 2013, the District Attorney was informed that Kaulick was due to be released as early as the next day. The District Attorney researched the file and learned, for the first time, that Kaulick had filed a petition for resentencing. As Kaulick's release was imminent, the District Attorney sought, and obtained, an immediate 30-day stay.

The District Attorney then began researching Kaulick's prison records, in order to determine whether to contest the court's ruling on the basis of dangerousness. According to his file with the Department of Corrections and Rehabilitation, Kaulick "has been found guilty of serious rules violations: twice for battery on a peace officer (January 14, 2005, January 18, 2002); six times for fighting or mutual combat (April 27, 2012, July 14, 2011, July 17, 2010, November 28, 2001, April 23, 2007, June 15, 2003); and once for disrespecting staff (January 18, 2011), possession of alcohol (December 18, 2009), under the influence of alcohol (December 7, 2008) and destruction of property (January 18, 2002)."[7]

Based on the District Attorney's review of this material, as well as information relating to Kaulick's convictions, the District Attorney concluded that resentencing Kaulick would, indeed, pose an unreasonable risk of danger to public safety. The District

---

[7]     The two alcohol-related offenses are significant. In Kaulick's parents' letters seeking leniency in 1999 and 2000, they argued that it was Kaulick's alcoholism which led to his criminal behavior. That Kaulick was still obtaining alcohol while in prison suggests that the causes of his criminally violent behavior may not have been ameliorated.

Attorney would have opposed Kaulick's petition on this basis, had it received notice of the petition and an opportunity to be heard.

       7.     *The Writ Petition*

On February 5, 2013, the District Attorney, on behalf of the People of the State of California, filed the instant petition for writ of mandate, challenging the trial court's order granting Kaulick's petition without notice and an opportunity to be heard. We granted an immediate stay of the order resentencing Kaulick, ordered counsel appointed for Kaulick, and issued an order to show cause.

In our order to show cause, we specifically requested the parties to brief five issues with respect to a moving defendant's petition for resentencing under the Act: (1) the prosecution's right to notice and the right to a full adversarial hearing; (2) the moving defendant's right to be personally present at any proceeding considering the issues; (3) the victim's right to be present at any proceeding considering the issues; (4) whether the resentencing must take place before the original sentencing judge; and (5) the nature of the prosecution's burden of proof in the proceeding. We subsequently modified the order to show cause to add two additional issues: (6) the "retroactive application of Proposition 36 to cases where a judgment imposing a three-strike sentence became final prior to the effective date of Proposition 36"; and (7) any impact of the recent decision in *People v. Yearwood* (2013) 213 Cal.App.4th 161, pet. for rev. filed Mar. 6, 2013 (*Yearwood*) on any of the issues raised in the instant proceeding. In Kaulick's opposition, he raised two additional issues: (8) whether the challenged resentencing order is not appealable by the prosecution, and therefore, not amenable to

10

challenge by petition for writ of mandate; and (9) whether a proceeding by which a defendant is denied resentencing based on a court's discretionary finding of dangerousness works a denial of the defendant's right to equal protection of the law. All of these issues have been fully briefed.

### SUMMARY OF ISSUES RESOLVED

We will address each of the issues enumerated above. We first consider the issue of appealability and/or challenge by writ petition, and conclude that the prosecution has the right to challenge the instant order by either appeal or petition for writ of mandate.

With respect to the issues discussed in our order to show cause (as modified), we conclude that (1) the prosecution has the right to notice and an opportunity to be heard; (2) both the defendant and the victim have the right to be heard at any hearing on a petition for resentencing under the Act; (3) the resentencing should take place before the original sentencing judge, if available, although this is waivable; (4) as to the issue of burden of proof of the issue of dangerousness, the prosecution must establish such dangerousness by a preponderance of the evidence; and (5) Kaulick's equal protection challenge is without merit.[8]

### DISCUSSION

1.    *The Act*

The court in *Yearwood* concisely explained the key effects of the Act as follows: "The Act changes the requirements for sentencing a third strike offender to an

---

[8]    We will discuss the decision in *Yearwood, supra,* 213 Cal.App.4th 161, as applicable.

11

indeterminate term of 25 years to life imprisonment.  Under the original version of the three strikes law, a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act dilutes the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  [Citations.]  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  [Citation.]"  (*Yearwood, supra,* 213 Cal.App.4th at pp. 167-168.)

Thus, there are two parts to the Act:  the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony (Pen. Code, §§ 667, 1170.12); the second part is *retrospective*, providing *similar*, *but not identical*, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126).  We are concerned in this case only with the second part.[9]

---

[9]    *Yearwood* was concerned with the issue of which part applied to a defendant sentenced prior to the effective date of the Act, but whose judgment was not yet final at that time, due to pending appeals.  *Yearwood* concluded that such a defendant could seek relief under the retrospective provision, for prisoners already sentenced, and not the prospective provision, for new offenders.  In our order modifying the order to show cause, we asked the parties to address "retroactive application of Proposition 36 to cases

The main difference between the prospective and the retrospective parts of the Act

is that the retrospective part of the Act contains an "escape valve" from resentencing for

prisoners whose release poses a risk of danger.[10] That is to say, under the prospective

part of the Act, if the defendant's current third strike offense is not serious or violent, and

none of four enumerated exceptions[11] applies, the defendant "shall be" sentenced as if the

where a judgment imposing a three-strike sentence became final prior to the effective date of Proposition 36" – that is to say, whether *either* portion of the Act applied to individuals, like Kaulick, whose judgments were already final. Both parties agree that the retrospective provision, but not the prospective provision, applies to those individuals. Kaulick interpreted our question as an invitation to disagree with *Yearwood*; that is, he argues that defendants whose cases were pending on appeal at the time the Act was adopted are entitled to relief under the prospective, rather than the retrospective, provision of the Act. That question is not before us. Kaulick's sentence had been final for ten years before the Act was passed; his sole avenue of relief is indisputably the retrospective portion of the Act.

[10] The procedural history of this case provides a perfect illustration of the need for such an escape valve when applying the Act retrospectively. Had Kaulick's trial taken place *after* the effective date of the Act, he would have been sentenced under the prospective part of the Act. As such, his conviction would have qualified him for a second strike sentence only. The prosecution would have then had the opportunity to decide whether to seek a retrial of the mistried counts, which were serious and violent felonies, in order to expose Kaulick to a third strike sentence. It is unclear, however, whether that option would be available to the prosecution now, some 13 years after the date of the offenses. The prosecution could not locate the complaining witness when these proceedings first came to its attention; it is unknown whether other witnesses would be available; and there may be a procedural bar to the reinstatement of the dismissed counts (See e.g., *Crockett v. Superior Court* (1975) 14 Cal.3d 433, 437-438). Moreover, when a petition for resentencing is filed, as was the case here, many years after the defendant was sentenced, the prisoner's conduct in the interim may be extremely relevant to a determination of whether a lesser sentence is, indeed, appropriate.

[11] The first three exceptions relate to a defendant's current offense, thereby excepting from the Act certain felonies which, although not meeting the statutory definition of serious or violent felonies, are considered serious enough to justify a third strike sentence. The fourth exception provides that if one of the defendant's two or more prior convictions is for any of eight identified offenses or types of offenses, the defendant is

defendant had only a single prior strike. (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) However, under the retrospective part of the Act, if the prisoner's third strike offense was not serious or violent, and none of the enumerated exceptions applies, the defendant "shall be" sentenced as if the defendant had only a single prior strike, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."[12] (Pen. Code, § 1170.126, subd. (f).) The main issues of dispute in this writ petition surround the means by which the court is to exercise its discretion on the issue of dangerousness.

2.      *The Writ Petition Is Properly Before This Court*

Kaulick first contends that this court lacks jurisdiction over the instant writ petition. "As a general rule, the People may not seek an extraordinary writ in circumstances where the Legislature has not provided for an appeal." (*People v. Superior Court (Vidal)* (2007) 40 Cal.4th 999, 1008.) We therefore consider whether the grant of Kaulick's petition is appealable.

---

similarly ineligible for a second strike sentence on conviction of a non-violent or non-serious felony. (Pen. Code, §§ 667, subd. (e)(2)(C)(i) – (iv); 1170.12, subd. (c)(2)(C)(i) – (iv).)

[12]      At oral argument, Kaulick suggested that even though a trial court determines that resentencing a petitioner would pose an unreasonable risk of danger to public safety, it nonetheless would have the discretion to resentence the petitioner to a second strike term. We disagree. The language of Penal Code section 1170.126, subdivision (f), states that the petitioner shall be resentenced *unless* the court finds an unreasonable risk of danger. It does not state that if the court finds an unreasonable risk of danger, it can nonetheless resentence the petitioner. In any event, the ballot arguments in support of Proposition 36 emphasized that the Act would not benefit " 'truly dangerous criminals.' " (*Yearwood, supra,* 213 Cal.App.4th at p. 171.) It is impossible to believe that the voters intended to allow a court the discretion to resentence defendants whose resentencing that court had already found would present an unreasonable risk of danger.

14

The prosecution's right to appeal a criminal matter is strictly limited by statute. (Pen. Code, § 1238.) There are at least two subdivisions of that statute, however, which allow for the instant challenge.

First, Penal Code section 1238, subdivision (a)(5) permits the prosecution to appeal "[a]n order made after judgment, affecting the substantial rights of the people." A distinction is made in case law between: (1) an order recalling the sentence and resentencing the defendant anew; and (2) an order modifying the sentence. In the former case, there is no post-judgment order as the new sentence becomes the judgment, which is therefore not appealable by the prosecution. (*People v. Rivera* (1984) 157 Cal.App.3d 494, 497.) In the latter case, however, when the judgment is modified (even if modified nunc pro tunc), the order modifying the judgment is a post-judgment order, which may be appealable under Penal Code section 1238, subdivision (a)(5). (*People v. Borja* (2002) 95 Cal.App.4th 481, 484.) The question thus arises as to whether a petition to recall and resentence pursuant to the Act results in a wholly new sentencing procedure – by which the new sentence becomes the original judgment – or simply results in modification of the original sentence. Kaulick draws an analogy to Penal Code section 1170, former subdivision (f)(1), which provided that, if the Board of Prison Terms determined that a determinate sentence was disparate, the court should hold a hearing "and may recall the sentence and commitment previously ordered and resentence the defendant *in the same manner as if the defendant had not been sentenced previously . . . .*"[13] (Italics added.)

---

[13]     Similar language is now found in Penal Code section 1170, subdivision (d)(1).

15

Relying on the italicized language, the court in *People v. Rivera, supra,* 157 Cal.App.3d at p. 497, concluded that the resentencing order was not appealable, as the defendant had been resentenced anew, and the resentence became the judgment. The analogy is inapt, however, as the resentencing provisions of the Act do not contain similar language. There is no language in Penal Code section 1170.126 providing that a resentence under the Act is to occur in the same manner as if the defendant had not been sentenced previously. Instead, the resentencing order is simply a modification of the original sentence. As such, it is appealable under Penal Code section 1238, subdivision (a)(5) as a post-judgment order affecting the substantial rights of the people.[14]

Second, even if Penal Code section 1238, subdivision (a)(5) does not apply, another section would allow a prosecution appeal in the instant case. Penal Code section 1238, subdivision (a)(10) permits the prosecution to appeal the "imposition of an unlawful sentence," and defines "unlawful sentence" to include "the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction." In this case, the court's resentencing of Kaulick clearly modified the effect of a prior conviction, as it sentenced Kaulick as though he had only one strike, rather than two. Moreover, the prosecution is challenging the court's order as *unlawful*. The prosecution is not simply asserting that the trial court abused its discretion in not finding that the "risk of danger" exception applied; the

---

[14]    It cannot be disputed that the order vastly reducing Kaulick's sentence substantially affected the rights of the people. Indeed, a single day sentence reduction has been found to have substantially affected the rights of the people. (*People v. Borja, supra,* 95 Cal.App.4th at pp. 483-484.)

16

prosecution is arguing that the court's order was unlawfully entered as it was made on an ex parte basis, without notice to the prosecution and an opportunity to be heard. As we agree with the prosecution on this point, the order is appealable on this second ground as well.[15]

Kaulick next suggests that, even if the order is appealable, it is not properly challenged by petition for writ of mandate. We disagree. "Code of Civil Procedure section 1085, providing for writs of mandate, is available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists [citation]; (2) ' "a clear, present . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present and beneficial right in the petitioner to the performance of that duty." ' [Citation.] A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act. [Citation]." (*People v. Picklesimer* (2010) 48 Cal.4th 330, 338-339.) Each of these factors is present in connection with the District Attorneys petition. First, an appeal would not provide a speedy and adequate remedy. Kaulick was scheduled for imminent release; even the trial court's stay order was only for 30 days. While it is true that this court could have stayed the matter while an appeal was pending (*Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 453), it is clear that this

---

**15** As noted, we will conclude that the sentence modification in this case was unlawful. In any event, a *claim* of an unlawful sentence is appealable, even though the court may ultimately conclude that the sentence was not unlawful. (6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Appeal, § 86, p. 361.)

matter requires speedy resolution.[16]  Second, as we shall explain, the trial court had

a clear, present ministerial duty to give the prosecution notice and an opportunity to be

heard prior to resentencing Kaulick.  Third, the prosecution had a clear, present right to

notice and an opportunity to be heard.  As such, the prosecution's pursuit of a petition for

writ of mandate is proper in the instant case.

3.      *The Prosecution Has a Right to Notice and a Hearing*

In this case, it is undisputed that the trial court granted Kaulick's petition for

resentencing under the Act without notice to the District Attorney,[17] or an opportunity for

the District Attorney to be heard.  The prosecution's petition for writ relief is based on

---

[16]      Indeed, Kaulick notes that *he* has an interest in prompt resolution of the matter, as any delay in resolving an appeal would leave him unnecessarily incarcerated.  We agree, but do not believe the interest is solely his.  If Kaulick is, in fact, entitled to a second strike sentence, he has already served his full term and should be released.  Justice is not served by keeping him incarcerated longer than necessary in order to resolve this matter by appeal.  Nor is the public fisc.  Kaulick argues that one of the purposes of the Act was to save money by not keeping eligible defendants "needlessly incarcerated for a longer period."  As such, speedy resolution of this writ petition is also in the interest of the public.

[17]      Kaulick notes that he did serve the Attorney General with his petition, and argues that this constituted sufficient notice to the prosecution, as both the District Attorney and the Attorney General represent the people.  (*Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1174.)  However, it is the District Attorney which represents the people before the trial court, so the District Attorney was the party which should have received notice.  In any event, we do not fault Kaulick, who was proceeding in pro. per., for not serving the right entity with his petition for habeas corpus.  The trial court, however, should have issued an order to show cause to the District Attorney, or otherwise required that the District Attorney be served with the petition.  "The burden of investigation and adversary proof is with respective counsel for the parties and is not the obligation or function of the court.  It is, however, the province of the court to insure the accomplishment of that concept."  (*People v. Hadley* (1967) 257 Cal.App.2d Supp. 871, 877.)

18

the argument that it was entitled to notice and a hearing prior to the court granting the motion.

Kaulick responds with the rather extraordinary assertion that the prosecution had no right to be present or heard with respect to his petition for relief. He takes the position that the trial court can exercise its discretion on the issue of dangerousness without the prosecution's input. Kaulick makes this argument despite the fact that he later argues that the prosecution has the burden of proving dangerousness.[18] In other words, Kaulick argues that the prosecution has the burden of establishing his dangerousness in response to his petition for resentencing, but that the prosecution has no right to a hearing in which to meet that burden. To state the proposition is to refute it.

In any event, the statutory language, as well as principles of due process, demand that the prosecution be given notice and an opportunity to be heard in response to a petition for resentencing. First, it is clear that the statutory language contemplates a hearing on the issue of dangerousness. Penal Code section 1170.126, subdivision (g). provides that a trial court, in exercising its discretion on the issue of dangerousness, may consider the following factors: (1) the petitioner's criminal conviction history; (2) the petitioner's disciplinary record and record of rehabilitation; and (3) "[a]ny other evidence the court, within its discretion, determines to be relevant" to the issue of dangerousness. While a portion of the petitioner's criminal conviction history will be before the court by

---

[18]     Indeed, he goes on to argue that the prosecution must establish dangerousness beyond a reasonable doubt.

means of the petition itself,[19] no evidence of the remaining factors will be before the court unless the prosecution is given notice and an opportunity to present such evidence. Even if the statutory language did not expressly contemplate a hearing,[20] one is implied by the listing of factors which the court is to take into account in its determination of the dangerousness issue.

Second, due process requires that the prosecution be afforded notice and an opportunity to be heard. "The parties to a criminal action are the People, in whose sovereign name it is prosecuted, and the person accused . . . . " (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.) "Once, as here, the adversary nature of a proceeding is established, then it follows that notice of all motions must be given whenever the order sought may affect the right of an adverse party. [Citations.] Correlative to the foregoing is the further rule that a court, after any judicial order regularly made, may not enter another and different order without notice to the adverse party." (*People v. Hadley, supra,* 257 Cal.App.2d Supp. at p. 875.) "[N]otices must be given of any application where the rights of an adverse party are affected, even though no statute, as here, specifically requires it." (*Ibid.*) " 'A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all

---

[19] A petition for resentencing under the Act shall specify all of the currently charged felonies which resulted in the sentence and all of the prior convictions alleged and proved as strikes. (Pen. Code, § 1170.126, subd. (d).)

[20] The language of the statute does expressly contemplate a hearing, referring to a "resentencing hearing ordered under the act," as a proceeding to which the crime victim is entitled to notice. (Pen. Code, § 1170.126, subd. (m).) Clearly, then, the drafters anticipated that resentencing would occur after a hearing.

the attributes of a judicial determination." ' " (*People v. Dennis* (1986) 177 Cal.App.3d 863, 873.)

We find persuasive the rationale of *People v. Rodriguez* (1998) 17 Cal.4th 253, which was concerned with whether a defendant had the right to be present at a hearing where the trial court, on remand, was to determine whether to exercise its discretion to strike a defendant's prior strike. "The People, who would have us answer the question in the negative, contend that 'the trial court can make an informed decision regarding its exercise of discretion without further argument by the parties. Indeed, from the record the court is able to glean the nature of the defendant's criminal history via the probation officer's report as well as the nature of the current offenses from the trial transcript.' '[L]ittle would be served,' the People submit, by allowing 'the parties to make superfluous arguments prior to the trial court making an initial decision relating to its inclination to strik[e] the prior convictions.' We disagree. The evidence and arguments that might be presented on remand cannot justly be considered 'superfluous,' because defendant and his counsel have never enjoyed a full and fair opportunity to marshal and present the case supporting a favorable exercise of discretion." (*Id*. at p. 258.) Kaulick's argument in the instant case is the same as the prosecution's argument rejected by the Supreme Court in *Rodriguez*. He suggests that the trial court can determine whether to exercise its discretion based on the limited record before it "without input or opposition." Just as a defendant must be permitted to argue for the trial court's exercise of discretion to strike a prior conviction, the prosecution must be permitted to argue for the court's exercise of discretion to find a risk of dangerousness.

Moreover, the prosecution's due process rights include the right to a full adversarial proceeding, in which it may present evidence, as well as argument. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1094 [the prosecution's substantial interest in the determination of the circumstances under which a capital defendant is entitled to pretrial release entitles the prosecution to a full adversarial proceeding with an opportunity to present evidence and argument].) As such, the prosecution was denied due process by the trial court's order granting Kaulick's petition for resentencing without giving the prosecution notice and an opportunity to be heard.[21]

4.      *The Defendant Has the Right to be Personally Present at the Hearings Considering Dangerousness and Resentencing*

In our order to show cause, we requested the parties to address the issue of the defendant's right "to be personally present at any proceeding considering the issues raised in Penal Code section 1170.126, subsection (f)." In responding to the question,

---

[21]      Our discussion is framed in terms of the trial court's discretionary determination of the defendant's dangerousness. However, an argument can be made that the prosecution also has the right to notice and a hearing on the issue of whether a prisoner is initially *eligible* for resentencing under the Act. Under the *prospective* part of the Act, a defendant whose third strike is not a serious or violent felony shall receive a second strike sentence "unless the prosecution pleads and proves" any of the four exceptions. (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) In contrast, under the *retrospective* part of the Act, after a defendant petitions for resentencing, "the court shall determine" if any of the exceptions apply. (Pen. Code, § 1170.126, subd. (f).) One of the exceptions is if the defendant "used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury" in the commission of the current offense. (Pen. Code, § 1170.12, subd. (c)(2)(C)(iii).) By its terms, the Act does not require a jury finding establishing this exception when a prisoner is seeking resentencing pursuant to the retrospective part of the Act; the court must simply "determine" whether the exception applies. To the extent the court's determination may be based on anything other than the undisputed record of the prisoner's conviction, the prosecution could certainly argue that it has a right to present evidence and be heard on the issue. As this issue is not presented by the instant writ petition, however, we express no opinion on it.

Kaulick argues that there are *two* proceedings at issue: (1) the court's initial determination of the prisoner's eligibility for resentencing; and (2) the resentencing itself. Kaulick argues that he does not have a right to be present at the first proceeding,[22] but does have a right to be present at the second.

We believe that Kaulick's interpretation of the statute may be over simplified. There are not two, but three, determinations at issue under Penal Code section 1170.126, subdivision (f): First, the court must determine whether the prisoner is eligible for resentencing; second, the court must determine whether resentencing would pose an unreasonable risk of danger to public safety; and third, if the prisoner is eligible and resentencing would *not* pose an unreasonable risk of danger, the court must actually resentence the prisoner.[23]

In any event, the parties agree, based on the statutory language, that a prisoner has a right to personally appear for both the second and third determinations. Penal Code section 1170.126, subdivision (i) provides, in pertinent part, "a defendant petitioning for resentencing may waive his or her appearance in court for the resentencing, provided that the accusatory pleading is not amended at the resentencing, and that no new trial or retrial

---

[22] As we have noted, the initial determination may, in fact, involve more than a determination based on an undisputed record. (See fn. 21, *ante*.) If that is so, the prisoner may argue that he has a right to be present. Again, as that issue is not presented in this matter, we express no opinion on it.

[23] Kaulick's incorporation of the dangerousness determination into the "resentencing" determination enables him to argue that dangerousness is a factor which enhances his sentence and therefore must be established beyond a reasonable doubt. (*People v. Towne* (2008) 44 Cal.4th 63, 74.) As we shall discuss, we reject this interpretation of the Act.

23

of the individual will occur.  The waiver shall be in writing and signed by the defendant."
We agree that this language encompasses both the discretionary determination *whether* to
resentence the defendant, and the resentencing hearing itself.

5.    *The Victim Has a Right to Notice and to be Heard at the Hearings Considering Dangerousness and Resentencing*

Similarly, the parties agree, based on statutory language, that the victim has a right
to notice and to be heard.  We also agree.  Penal Code section 1170.126, subdivision (m),
provides that "[a] resentencing hearing ordered under this act shall constitute a 'post-
conviction release proceeding' under paragraph (7) of subdivision (b) of Section 28 of
Article I of the California Constitution (Marsy's Law)."  That subdivision of Marsy's
Law provides that crime victims shall be entitled to "reasonable notice of all . . . parole or
other post-conviction release proceedings, and to be present at all such proceedings."
The next subdivision provides that victims have a right to be heard at any proceedings
involving post-conviction release decisions.  (Cal. Const., art. I, § 28, subd. (b)(8).)

While it could conceivably be argued that the victim's right to be heard applies
only to the resentencing hearing (the third determination) and not the dangerousness
hearing (the second determination), we reject that view.  Marsy's Law already provides
that victims have the right to be heard at any proceeding involving "sentencing."
(Cal. Const., art. I, § 28, subd. (b)(8).)  The fact that the Act specifically classifies
a "resentencing hearing ordered under this act" as a "post-conviction release proceeding"
implies that this subdivision of the Act is concerned with something more than a simple
sentencing hearing.  Moreover, as a practical matter, it would make little sense to permit

the crime victim to be heard on the issue of which second strike term to impose, but not permit the victim to be heard on the issue of whether resentencing the defendant at all would present a risk of dangerousness. We therefore conclude that the victim has a right to notice of, and to be heard at, the hearings regarding dangerousness *and* resentencing.

6. *The Proceedings Should be Conducted Before the Original Sentencing Judge, if Available; Waiver is Also Permissible*

Penal Code section 1170.126, subdivision (b) specifies that a prisoner petitioning for resentencing must file the petition "before the trial court that entered the judgment of conviction in his or her case." The reference to "the trial court that entered the judgment" is clearly a reference to the trial judge. This is confirmed by a later subdivision, which uses the terms "judge" and "court" interchangeably, when identifying the judicial officer who must rule on the petition. Penal Code section 1170.126, subdivision (j) provides, "[i]f the court that originally sentenced the defendant is not available to resentence the defendant, the presiding judge shall designate another judge to rule on the defendant's petition."

It is therefore clear that the initial sentencing judge shall rule on the prisoner's petition. However, as with other rights, a defendant may waive the right for the petition to be considered by a particular judge.[24] "A valid waiver of any right, however, presupposes an actual and demonstrable knowledge of the right being waived so that the waiver is deemed knowing and intelligent. Courts should not find a waiver by mere

---

[24] As we read the Act, however, that waiver should be obtained prior to *any* judicial decisionmaking.

25

silence or acquiescence even when the defendant is represented by counsel. [Citation.]" (*People v. Poole* (1985) 168 Cal.App.3d 516, 521.)

7.    *The Prosecution Bears the Burden of Establishing Dangerousness by a Preponderance of the Evidence*

Under Penal Code section 1170.126, subdivision (f), once a court determines that a petitioning prisoner is eligible for resentencing under the Act, the petitioner "shall be resentenced" to a second-strike sentence "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." The next issue raised by the instant petition is the standard of proof by which dangerousness is to be established by the prosecution.[25]

Kaulick argues that, consistent with the requirements of the United States Constitution, the standard must be beyond a reasonable doubt. This argument presumes that a finding of dangerousness is a factor which justifies enhancing a defendant's sentence beyond a statutorily-presumed second strike sentence.

"In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [], the United States Supreme Court held that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' Subsequently, in *Blakely v. Washington*, the high court clarified that the 'prescribed statutory maximum' for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is 'the maximum sentence a judge may impose *solely on the basis of the facts reflected in the*

---

[25]    The parties agree that the People bear the burden of proving dangerousness.

26

*jury verdict or admitted by the defendant.'* (*Blakely v. Washington* (2004) 542 U.S. 296, 303 [].)  As thereafter explained in *Cunningham* [*v. California* (2007) 549 U.S. 270], 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.'  (*Cunningham, supra,* 549 U.S. at p. 281 [].)" (*People v. Towne, supra,* 44 Cal.4th at p. 74.)

The U.S. Supreme Court no longer draws a distinction between a sentencing factor and an element of the offense.  The focus is, instead, on whether "the factual finding at issue increased the maximum potential penalty for the offense." (*People v. Towne, supra,* 44 Cal.4th at p. 77.)

However, not *every* factor relied on by a sentencing court to increase the penalty imposed must be found by a jury beyond a reasonable doubt.  Indeed, certain aggravating factors relating to prior convictions need not be found by a jury beyond a reasonable doubt.  (*People v. Towne, supra,* 44 Cal.4th at p. 75.)  Moreover, once *one factor* justifying the increased maximum penalty has been properly established, the court may properly rely on *other factors* which have not been found by a jury beyond a reasonable doubt.  (*Ibid.*)  In other words, if the single factor properly found justifies the imposition of a specific increased sentence, the defendant is *eligible* for that sentence, and it may be imposed for any number of reasons *not* found by a jury beyond a reasonable doubt. (*Ibid.*)  Indeed, once a defendant is properly subject to an increased term, the court may impose that term in reliance on facts underlying charges on which the defendant was acquitted.  (*Id.* at pp. 84-86.)  Once the sentencing range is properly established by the

jury findings and/or the defendant's prior record, " '[j]udicial factfinding in the course of selecting a sentence within' " that range does not implicate a defendant's jury trial rights or the right to proof beyond a reasonable doubt. (*Id*. at p. 86.)

We must therefore consider whether, *absent* a finding of dangerousness, Kaulick was statutorily subject to continuing to serve his indeterminate third-strike term. Kaulick argues that he was not. In other words, Kaulick argues that, once the trial court concluded that he was *eligible* for resentencing under the Act, he was subject *only* to a second-strike sentence, *unless* the prosecution established dangerousness.

The statutory language, however, is not amenable to Kaulick's interpretation. Penal Code section 1170.126, subdivision (f) does not state that a petitioner eligible for resentencing has his sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established). Instead, the statute provides that he "shall be resentenced" to a second-strike sentence "unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the

28

prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced.[26]

The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury. Kaulick would interpret the

---

[26] We note that the drafters of the Act were well aware of the constitutional requirements of jury trials and proof beyond a reasonable doubt for factors which enhance sentences. The prospective part of the Act provides that, when a defendant's third strike is not a serious or violent felony, the defendant "shall be sentenced" to a second-strike sentence "unless the prosecution pleads and proves" any of the four statutory exceptions. (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) In other words, under the prospective part of the Act, a second-strike sentence is, in fact, the presumed sentence, and a third-strike sentence cannot be imposed unless one of the four enumerated exceptions is pleaded and proven. In contrast, however, the "unless the prosecution pleads and proves" language does not appear in the retrospective part of the Act. Had the drafters of the Act intended Kaulick's interpretation, the retrospective part of the Act would have provided that if the petitioner were eligible for resentencing, the sentence would be recalled and the petitioner sentenced to a second-strike sentence "unless the prosecution pleads and proves" that such a sentence would constitute an unreasonable risk of danger to the community. They did not do so.

This is not to say that the absence of "unless the prosecution pleads and proves" language indicates that the constitutional requirements of proof beyond a reasonable doubt and jury trial necessarily do not apply to a factor enhancing a sentence. The constitutional requirements are imposed in any case where a factor enhances a sentence, regardless of whether the statute is framed in that manner. We simply note, however, that the use of such language in the prospective part of the Act, and its absence from the retrospective part of the Act, support the conclusion that dangerousness in the retrospective part of the Act is not, in fact, a sentencing factor.

retrospective part of the Act to mean that every petitioner who meets the eligibility requirements for resentencing is immediately entitled to the recall of his or her sentence, with resentencing to a second-strike term the presumptive sentence, and resentencing to the current third-strike term available only on proof beyond a reasonable doubt of the additional factor of dangerousness. There is nothing in the statutory language to support this interpretation.

Moreover, the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws. (*Dillon v. United States* (2010) 130 S. Ct. 2683, 2692 (*Dillon*).) At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements. Those policy statements, in turn, provided that a sentence could not be reduced below the minimum sentence of an amended sentencing range except to the extent that the original term was below the original range. The Supreme Court had already held that, in order to avoid constitutional problems, the federal Sentencing Guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. (*Id*. at p. 2687.) The Supreme Court concluded that it remained mandatory.

30

This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. (*Id*. at p. 2691.) The court stated, "Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range." (*Id*. at p. 2692.) Such decisions, stated the court, simply do not implicate Sixth Amendment rights. (*Ibid.*)

The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt.

31

Instead, we conclude the proper standard of proof is preponderance of the evidence. Evidence Code section 115 provides that, "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." There is no statute or case authority[27] providing for a greater burden, and Kaulick has not persuaded us that any greater burden is necessary. In contrast, it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. (*In re Coley* (2012) 55 Cal.4th 524, 557.) As dangerousness is such a factor, preponderance of the evidence is the appropriate standard.[28]

        8.      *This Interpretation Does Not Violate Kaulick's Right to Equal Protection*

Kaulick finally argues that his right to equal protection of the law is violated by any interpretation of Penal Code section 1170.126 that allows a trial court to decline to resentence him based on a finding of dangerousness by a less rigorous standard of proof than beyond a reasonable doubt. He rgues that there are many other provisions of the law which provide for involuntary commitment of individuals on the basis of findings of future dangerousness. Each of these provisions requires proof of dangerousness beyond a

---

[27] Evidence Code section 115 "expressly contemplates exceptions to the preponderance standard developed by the common law." (*In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1490.)

[28] Kaulick suggests that the California Supreme Court, in a case involving the Sexually Violent Predator Act, held that the preponderance standard contemplates a lesser showing than "more likely than not." We disagree. In *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 251, the Supreme Court held that a hearing to determine whether probable cause existed to believe a defendant was a sexually violent predator requires a *lesser* standard of proof than preponderance of the evidence. The preponderance standard remains "more likely than not." (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 319.)

reasonable doubt to a unanimous jury. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 221, 231 [appointment of conservator, with power to commit, for gravely disabled person]; *People v. Thomas* (1977) 19 Cal.3d 630, 633 [involuntary commitment of narcotics addict, also involuntary commitment as mentally disordered sex offender].) Kaulick contends that sentencing him to prison for an indefinite term based on a finding of dangerousness *not* made beyond a reasonable doubt by a unanimous jury constitutes a violation of equal protection.

The contention is meritless. " 'Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment. [Citation.]' [Citation.]" (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1217.) Kaulick is not similarly situated to individuals facing involuntary commitment on a finding of dangerousness. Instead, Kaulick *was properly sentenced* to prison for an indefinite term because he was *properly convicted* (beyond a reasonable doubt, by a unanimous jury) of a third felony after he had committed two prior serious or violent felonies. It was his third felony conviction which, pursuant to the law in effect at the time, subjected him to an indeterminate sentence. Now, due to the adoption of the Act, Kaulick may be entitled to a downward modification of this indeterminate term to a determinate second-strike sentence. That he may be denied such downward modification due to a finding of dangerousness based on a preponderance of the evidence does not mean that he would be subjected to indefinite confinement based on this finding. He is subject to the indeterminate term due to his original third-strike sentence; the dangerousness finding would simply deny him a

33

downward modification.[29]  This process does not deny Kaulick his constitutional right to equal protection of the law.

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the trial court to vacate its order resentencing Kaulick under the Act, and to issue a new and different order setting a hearing on his petition and conducting such further proceedings as may be appropriate and consistent with the views expressed herein.

*CERTIFIED FOR PUBLICATION*

---

[29]     A trial court's decision to refuse to resentence a prisoner, based on a finding of dangerousness, is somewhat akin to a decision denying an inmate parole.  Such a decision need only be supported by "some evidence."  (*In re Stevenson* (2013) 213 Cal.App.4th 841, 866 & fn. 8.)  In such a case, the inmate is not resentenced to the remainder of his indeterminate term based on a decision supported only by "some evidence"; the inmate's sentence is supported by his conviction.  Similarly, Penal Code section 1170, subdivision (e) provides that the Board of Parole Hearings may recommend that a prisoner's sentence be recalled if the prisoner is terminally ill or medically incapacitated, and the "conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety."  (Pen. Code, § 1170, subd. (e)(2)(B).)  Although the statutory language states that the Board of Parole Hearings "may" recommend recall of sentence if the conditions are met, it has been interpreted to mean the Board "must" recommend recall if the conditions are met.  (*Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 582.)  However, a Board's decision that an inmate is ineligible for release because the conditions of release would pose a threat to public safety must be supported only by "some evidence."  (*Id*. at pp. 582-583.)  This does not mean that an inmate is otherwise eligible for release but that release can be denied on a finding supported only by "some evidence."  It simply means that the inmate remains subject to his initial sentence unless certain findings are made; these findings need not be established beyond a reasonable doubt.

34

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.                                    KITCHING, J