Filed 2/11/14  P. v. Stuckey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | C074261 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F5542) |
| v. |  |
| DONALD EUGENE STUCKEY, |  |
| Defendant and Appellant. |  |

Defendant Donald Eugene Stuckey appeals from the trial court's denial of his petition for resentencing under the Three Strikes Reform Act of 2012. Under the Three Strikes Reform Act, "prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1286.) If a defendant such as the one here satisfies certain criteria, "the petitioner shall be resentenced . . . unless the court, in its

1

discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code,[1] § 1170.126, subd. (f).) "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

The trial court denied defendant's petition to recall his sentence because he "poses an unreasonable risk of danger to public safety." Defendant's appeal raises seven contentions attacking the trial court's exercise of discretion. The People begin their response by alleging defendant was not entitled to relief in this proceeding because he agreed to the 25-year-to-life sentence as part of a plea agreement.

We affirm. The People specifically waived in the trial court the contention that defendant's plea agreement precluded him from relief under the Three Strikes Reform Act. As to defendant's arguments, the court acted well within its discretion, and the factual premises of many of defendant's arguments are wrong. Contrary to defendant's arguments, the court evaluated defendant's insight; the court articulated a rational nexus to public safety; the court did not have to appoint an expert to conduct a risk assessment; and the court did not place the burden of proof on defendant.

---

[1] All further section references are to the Penal Code unless otherwise indicated.

2

FACTUAL AND PROCEDURAL BACKGROUND

A

*Defendant's Juvenile History, Criminal History, And Misconduct In Prison*

Defendant's contact with the juvenile justice system began when he was approximately 12 years old. He had juvenile adjudications for car theft, burglaries, joyriding, contempt of court, violations of probation, escape from a boys' ranch, hit and run, drunk in public, disturbing the peace, resisting arrest, vandalism, and petty theft. He was confined at juvenile hall, a boys' ranch, a boys' treatment center, and ultimately the California Youth Authority. He was released from the California Youth Authority in 1983 when he was approximately 19 years old and then in two separate incidents in 1984 he committed an assault with a deadly weapon and grand theft from a person. In the grand theft, defendant stole cigarettes and punched the store clerk repeatedly in the face while threatening to kill the clerk. He was again committed to the California Youth Authority.

After he was discharged from the California Youth Authority but while still on parole, defendant committed his first strike, assault with the personal use of a deadly weapon, that was sustained in February 1988 at the same time he also sustained a conviction for attempted kidnapping. These crimes began when defendant was following a 17-year-old girl in his car. He got out of his car, grabbed her arm, and she started screaming. Defendant threatened to shoot her and told her "shut up you[']r[e] coming with me." As the girl continued to resist, a passerby intervened, and defendant fled. A few hours later, defendant went into the apartment of another woman and held a knife to her throat. For these crimes, defendant was sentenced to three years and eight months in prison and paroled in March 1990.

Defendant violated parole one month later and then again two more times from 1990 to 1991, including once because he committed an aggravated battery, and he was

3

returned to prison. Two years later in 1993, he was convicted of theft and receiving stolen property and was sentenced to one year in county jail.

In October 1994, defendant committed his second strike, kidnapping. Defendant and his sister forced the victims at knifepoint (defendant swung the knife at one of the victims) to give them a ride to a liquor store in the victims' car. When defendant and his sister got out of the car, defendant told the victims he would kill them if they told anybody.

Six months later, in April 1995, defendant committed his third strike, receiving stolen property. Using a knife, defendant robbed a convenience store clerk of money, beer, and cigarettes. Defendant pled guilty to receiving stolen property and admitted two prior strikes in return for a sentence of 25 years to life and dismissal of a charge of second degree robbery and three enhancements. This term was to be served after the conclusion of an 18-year sentence he received for the second strike.

Defendant has been incarcerated for these last offenses from 1995 to present, approximately 18 years. While incarcerated in July 1998, he was found to be under the influence of alcohol. In September 1998, he failed to report to his job assignment. In October 1998, he kicked a correctional officer in her knee and spit in her face while under the influence of alcohol. In 2001, defendant obstructed a correctional officer from doing the officer's duties by refusing to remove coverings in his cell that were shielding the officer's view. In April 2003, he failed to report to his job assignment. In November 2004, he failed to report to that job assignment again. In January 2011, he refused to accept his assigned housing.

B

*Defendant's Petitions And The People's Response*

Defendant filed a pro. per. petition to recall his sentence under the Three Strikes Reform Act. When counsel was appointed for him, counsel filed a supplemental petition arguing that denial of the petition would be an abuse of the trial court's discretion,

4

stressing that the statutory scheme requires the court to resentence defendant unless he poses an unreasonable risk of danger to public safety. The People filed a response conceding that defendant was eligible to have his sentence recalled but argued "defendant poses a completely unreasonable risk of danger to public safety" and attached supporting documents.

## C

### *The Hearing*

Defendant was the only witness who testified. He was 48 years old. He "had a problem with alcohol." In prison there were a "few occasions where [he] got involved with [pruno]," he "was given 115s," and was "under the influence. [H]e did things. That's how [his] whole life has been here from using alcohol." He was "ashamed of [his] life," felt "terrible" and "bad" for his victims, "made a lot of wrong choices by being under the influence," and was an "an alcoholic." The 1998 episode in prison where he kicked a correctional officer and spit in her face was because of "alcohol abuse." He started AA in 1996 or 1997 but did not attend AA from 1998 to 2013. He now attends AA twice a week and explained that part of the reason he started going now was to "help [his] situation right here."

## D

### *The Trial Court's Ruling*

The trial court issued the following written ruling:

"Despite [defendant's] relatively good disciplinary record since 1999, the reasons for denying the petition are as follows:

"His prior criminal history began in 1976 when he was a juvenile, and continued nearly uninterrupted for 19 years, until he was removed indefinitely from the community by his current incarceration. His repeated criminal conduct often involved the use of weapons and the threat of great bodily injury and death. Although [defendant] concedes that alcoholism underlie[s] his criminal conduct, he failed to participate in treatment for

5

that condition for nearly 15 years of his 18 years of incarceration. The petitioner incurred a number of disciplinary actions early in his incarceration, including one for battering an officer. Finally, and most significantly, he lacks any history of remaining free of criminal conduct for an extended period of time after prior releases from custody. These facts lead this court to conclude that upon resentencing and release from custody the defendant would pose an extremely high risk of re-offense in the violent criminal manner of his past criminal conduct, and therefore, poses an unreasonable risk of danger to public safety."

DISCUSSION

I

*The People Have Waived Their Argument That Defendant Cannot Petition To Modify His Sentence Because They Specifically Declined To Raise This Argument In The Trial Court*

We begin by addressing the People's argument that defendant "is entitled to no relief in this proceeding" because he is "serving a stipulated sentence he agreed to as part of a plea agreement." This contention is based on an argument that defendant "should be estopped from petitioning to modify or recall a sentence he freely and voluntarily agreed to" and that "[t]he People are completely entitled to the benefit of and enforcement of that plea bargain and [defendant] here cannot be now heard attempting to undo that bargain." The People have waived this issue by specifically declining to argue it in the trial court.

At the hearing, the trial court on its own raised the issue of "how much should it play into the Court's decision that we have a negotiated disposition . . . ?" Defense counsel responded, "the People have not complained in their papers that they have not received the benefit of the bargain, so they have not made that prayer . . . . ." The People responded, "It is the People's position that the issue was not necessarily ripe yet, whether the People have received their bargain. If this . . . resentencing does not happen, then I don't think it is necessarily something to argue." The court then asked the following: "Well, then, why don't we do this? Sounds like both of you are agreed that . . . at least up

6

until this point it is not a factor the Court should consider in determining whether . . . resentencing would pose an unreasonable risk of danger to public safety. So we'll narrow the scope of this proceeding to that issue. If the court determines it will resentence the petitioner, then we can go from there. If the People want to make another motion, we'll take it one step at a time, okay?" The People responded, "Thank you" and the court said, "All right."

The People's deliberate decision to forgo an argument that the court entertaining the recall petition to determine defendant's unreasonable risk of danger to public safety deprived the People of the benefit of its bargain waives this argument on appeal. (See *People v. Burgener* (2003) 29 Cal.4th 833, 886 [a defendant's failure to raise an issue in the trial court waives the issue on appeal]; *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6. [waiver is the " 'intentional relinquishment or abandonment of a known right.' "].)

II

*The Trial Court Was Well Within Its Discretion*

*To Deny Defendant's Petition*

Defendant raises seven contentions claiming the trial court abused its discretion. One contends the trial court failed to recognize and exercise the full extent of its discretion, because it failed to evaluate his insight into his criminal and antisocial behavior to determine his risk to public safety. Four contend the trial court failed to articulate a rational nexus to public safety when citing four factors it selected (criminal history, prison misconduct, alcohol abuse, criminal history that began as a youth). One contends the trial court should have appointed an expert to conduct a forensic assessment of defendant's risk to public safety. And the last contends the trial court misplaced the burden of proof on defendant. We address these contentions below.

## A

*Insight*

Defendant contends the trial court failed to recognize and exercise the full extent of its discretion, because it failed to evaluate his insight into his criminal and antisocial behavior, including his insight into his "lengthy juvenile criminal history" to determine his risk to public safety. In defendant's view, "the record is barren of any evidence of [his] present insight and acceptance of responsibility into his prior criminal behavior, both of which are important factors in determining current dangerousness." Defendant's argument is a nonstarter because its factual premise is wrong. As we explain, the court heard defendant's testimony on his insight into his criminal behavior and actually based its ruling not on lack of insight but defendant's failure to meaningfully address his problems.

In its written ruling, the court noted that "[a]lthough [defendant] concedes that alcoholism underlie[s] his criminal conduct, he failed to participate in treatment for that condition for nearly 15 years of his 18 years of incarceration, including one for battering an officer." At the hearing on the petition, defendant testified he "had a problem with alcohol." He was "ashamed of [his] life," felt "terrible" and "bad" for his victims, "made a lot of wrong choices by being under the influence" and described himself as "an alcoholic." When asked about how he addressed his alcohol-related issues, defendant explained he started AA in 1996 or 1997, but acknowledged that in 1998 he kicked an officer in her knee and spit in her face when he was under the influence of alcohol. He did not attend AA from 1998 to 2013. He now attends AA twice a week and explained that part of the reason he started going now was to "help [his] situation right here."

This testimony and the court's ruling show the court did hear evidence on defendant's insight into his criminality and considered this evidence in its ruling.

8

B

*The Court Explained Why The Factors It Articulated*

*Showed A Rational Nexus To Public Safety*

Defendant contends the trial court failed to articulate a rational nexus to public safety when citing four factors it relied on to deny defendant's petition (criminal history, prison misconduct, alcohol abuse, criminal history that began as a youth). As to the last factor, defendant further contends it is actually a mitigating factor because minors bear lower moral culpability for their crimes than adults. Again, as we explain, defendant's contention is a nonstarter because its factual premise is wrong. The court considered these factors and explained why their existence posed an unreasonable risk of danger to public safety.

As the court noted, defendant's juvenile record and criminal history was significant because his crimes were not isolated or aberrant, i.e., they "continued nearly uninterrupted for 19 years until he was removed indefinitely from the community by his current incarceration." The court explained their nexus to current dangerousness as follows: "His repeated criminal conduct often involved the use of weapons and the threat of great bodily injury" and he "lacks any history of remaining free from criminal conduct for an extended period of time after prior releases from custody." As to his juvenile record, defendant is wrong that the court abused its discretion by failing to view it as a mitigating factor because, as the court explained, it was the beginning of defendant's essentially uninterrupted life of crime. It was not a situation where defendant's youth could be blamed for his bad acts because here those bad acts continued uninterrupted through adulthood.

Finally, defendant's prison misconduct was significant because it included a 1998 incident where he battered a correctional officer while under the influence of alcohol. The court explained the nexus to current dangerousness as follows: he "concedes that

9

alcoholism underlie[s] his criminal conduct, [yet] he failed to participate in treatment for that condition for nearly 15 or his 18 years of incarceration."

Based on the trial court's written ruling, defendant is wrong the court failed to articulate a rational nexus to public safety.

C

*The Court Was Within Its Discretion*

*Not To Appoint An Expert To Prepare A Risk Assessment*

Defendant contends the court abused its discretion by not appointing an expert to prepare a forensic assessment of his risk to public safety. As we explain, defendant's argument is based on two laws that do not apply to him, and there is no requirement that a risk assessment be prepared for a hearing on a defendant's petition for resentencing under the Three Strikes Reform Act.

Defendant first cites the requirement that with certain exceptions, "[p]rior to a life inmate's initial parole consideration hearing, a Comprehensive Risk Assessment will be performed by a licensed psychologist employed by the Board of Parole Hearings." (Cal. Code Regs., tit. 15, § 2240, subd. (a).) Defendant argues that "[g]iven that public safety is the paramount consideration in determining a recall petition, and that somewhat similarly situated life-term inmates seeking parole are entitled to receive psychological evaluations for performance of comprehensive risk assessments, it would seem to follow that before deciding whether a recall petitioner poses an unreasonable risk of danger to society, the court should appoint an expert to perform a comprehensive forensic risk assessment--as in the case with life-term inmates seeking parole." The problem with defendant's argument is that this regulation applies only to inmates being considered for parole and that unlike in that situation, the Legislature has not required the appointment of an expert to conduct a risk assessment on a petition to recall a sentence under the Three Strikes Reform Act.

10

Defendant second cites the requirements that in "[a] trial . . . of the question of mental competence," "[t]he court shall appoint a psychiatrist or licensed psychologist . . . to examine the defendant" and, among other things, "[t]he examining psychiatrists or licensed psychologists shall . . . address . . . whether the defendant is a danger to self or others." (§ 1369, subd. (a).) Defendant claims that under this Penal Code section, the court had authority to appoint experts to determine whether he was a danger to himself or others. Defendant's claim is wrong because this section of the Penal Code applies only to "[a] trial . . . of the question of mental competence" and not to the proceeding here.

In summary, the regulation and the Penal Code section defendant cites do not apply to him and there is nothing in the Three Strikes Reform Act that requires a trial court to appoint an expert to conduct a risk assessment.

D

*The Trial Court Did Not Place The Burden Of Proof On Defendant*

Defendant contends the court abused its discretion by improperly placing the burden of proving lack of dangerousness on him. Defendant's contention is based on a colloquy between the court and defense counsel at the beginning of the hearing as follows:

THE COURT: [W]ho would the burden fall on? Let me see if I printed out -- what does the code specify?

[DEFENSE COUNSEL]: Well, Judge, my -- Mr. Stuckey is a petitioner.

THE COURT: So the burden should be on him.

[DEFENSE COUNSEL]: Right. And, um --

THE COURT: Would you like to present some evidence?

[DEFENSE COUNSEL]: I would -- I will be calling Mr. Stuckey . . . .

This colloquy did not indicate the court was placing the burden of proof as to the question of dangerousness on defendant. Rather, consistent with defense counsel's position, it was placing the burden of going forward with the evidence on defendant.

11

This interpretation of the colloquy (that the court did not place the burden of proof on defendant) is supported by the parties' pleadings, which the court reviewed. Defense counsel's supplemental petition argued that a denial of the petition would be an abuse of the trial court's discretion, stressing that the statutory scheme requires the court to resentence defendant unless he posed an unreasonable risk of danger to public safety. The People filed a response arguing "defendant poses a completely unreasonable risk of danger to public safety" and then supported that argument with evidence. Thus, defendant's argument is based on the faulty factual premise that the court placed the burden of proof (as opposed to the burden of going forward) on him.

## DISPOSITION

The judgment is affirmed.


      ROBIE      , J.


We concur:


      BLEASE      , Acting P. J.


      BUTZ      , J.