Filed 1/6/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

     Petitioner,

v.

THE SUPERIOR COURT OF
RIVERSIDE COUNTY,

     Respondent;

RICKY BURTON,

     Real Party in Interest.

E060210

(Super.Ct.No. RIF098285)

OPINION

ORIGINAL PROCEEDINGS; petition for writ of mandate and/or prohibition.
Becky Dugan, Judge. Petition granted.

Paul E. Zellerbach, District Attorney, and Emily R. Hanks, Deputy District
Attorney, for Petitioner.

No appearance for Respondent.

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public Defender, for Real Party in Interest.

Under the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)) (the Act), "prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction."  (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1286.)  If certain criteria are met, the inmate shall be resentenced "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f).)

The People have filed this petition for writ of mandate and/or prohibition challenging the trial court's order continuing an inmate's petition for resentencing under Penal Code section 1170.126 for two years, so that the inmate could prove to the court he was no longer a danger to society.  We agree with the People that the superior court acted without statutory authority; accordingly, we grant the People's petition and direct the superior court to deny the inmate's petition for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Real party in interest (Burton) was convicted in 2001 for possession and for transportation of cocaine base for sale.  (Health & Saf. Code, §§ 11351.5, 11352.)  It was

2

found that he had two prior strikes (Pen. Code, § 667, subds. (c), (e)),[1] two prison priors (§ 667.5, subd. (b)), and two drug offense priors (Health & Saf. Code, 11370.2, subd. (a)). He was sentenced to 25 years to life and a determinate term of four years.

On December 4, 2012, Burton filed a petition to recall his sentence under the Act. (§ 1170.126.) The court appointed the public defender to represent Burton. The hearing on the petition was continued multiple times to obtain records and for other reasons.

The People filed opposition to the petition on the ground that Burton poses an unreasonable risk of danger to public safety. The People indicated that Burton's prior strikes were for robbery and burglary, including a home invasion robbery with the use of a firearm. The People also alleged that he has a lengthy history of criminal misbehavior, including membership in a gang. While incarcerated, the People allege that he has engaged in serious misconduct, including participation in prison riots and plans to assault custodial staff, as well as assault on other inmates occurring as late as 2011.

Burton responded by pointing out that his current offenses did not involve violence and that prior offenses were committed when he was relatively young. He also offered evidence of rehabilitation and claimed the prison disciplinary information was inaccurate and he was a victim of abuse by prison guards.

The People submitted a supplemental opposition with prison records to support their claim that in 2005 Burton had participated in a plan to murder prison staff.

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

The hearing regarding Burton's resentencing was scheduled for November 7, 2013.  That same day, Burton filed a motion to continue the hearing for one year pursuant to Penal Code section 1050.  The court added that Burton's request was not really a continuance, but rather a deferment of the petition.

The court indicated that Burton currently poses a danger to the community.  It noted that the only violence was with regard to the robbery strike.  "Now, Mr. Burton says he didn't have the gun but his little co-conspirator next to him had a gun and pointed it in somebody's face.  That is a violent crime. . . .  [¶]  [A] drug dealer who arms himself is a dangerous person to the community.  I will make that finding now.  He is a dangerous person."  The court also noted that Burton is a current gang member.  "It's a concern that a guy who's been drug dealing since his mid teens, who's drug dealt his whole life, who's drug dealt in association with his gang, is still in a gang, and still hasn't gotten drug treatment.  That is the court's concern."

The court granted the motion and continued the hearing for two years, to November 6, 2015.  The court indicated that one year was not long enough for the court to "change my mind," and "[t]wo years might give him some hope of changing my mind.  The court recommended that Burton be placed where he could get actual drug treatment, not just Narcotics Anonymous and Alcoholics Anonymous.  In addition to drug treatment, the court indicated he had to obtain his GED and dissolve his membership in the gang in order to show he was no longer a danger.  The prosecutor objected to the "deferment," stating that that was not something that the court has the jurisdiction to do.

4

Under the Act, a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is itself a serious or violent felony. If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second strike, rather than a third strike offender. The Act also provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction, which was not a serious or violent felony, may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction. According to the specific language of the Act, however, a current inmate is not entitled to resentencing if that would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) In exercising its discretion, the court may consider the inmate's criminal history, his disciplinary record while incarcerated, as well as any other evidence relevant to the issue. (§ 1170.126, subd. (g).)

Burton contends by allowing the court to exercise its discretion and consider any relevant evidence to determine an inmate's current dangerousness, section 1170.126, subdivisions (f) and (g), clearly authorizes a court to continue determination of a resentencing petition where it believes that the passage of time will assist it making a fair and accurate determination of an inmate's dangerousness. In other words, since future dangerousness is the issue, the court has the discretion to continue the matter to assess the

5

risk factor. Thus, in his view, the risk he posed at the time of the hearing on November 7, 2013, would not fairly and accurately reflect current dangerousness two years down the road. He notes that "remoteness of the crimes" is a factor that the court may consider in determining future dangerousness, and his past crimes will be more remote in two years. Since he would not have been resentenced for two years anyway, the assessment of his dangerousness at that time will be fairer and more accurate, better reflecting the remoteness of past crimes and the record of rehabilitation during the interim. This argument ignores what the Act actually provides—a one-time determination of a petition filed within two years of its effective date. If we were to accept Burton's argument, then a court would be able to defer a ruling for two, three, or more years, to make a better assessment of dangerousness if the inmate would remain incarcerated during that time. Burton cites a parole suitability case, *In re Lawrence* (2008) 44 Cal.4th 1181, to support this point. The crucial distinction is that the parole board can find an inmate serving a life term unsuitable for parole but rehear the matter within a certain time to assess his behavior in prison, among other factors, to determine his dangerousness. There is no such provision for re-evaluation in the Act. While the court must make an assessment of the risk of danger an inmate will pose in the future, it does not follow that the court may defer making that determination until some indefinite time in the future. As the People point out, every day trial courts are required to make discretionary sentencing decisions based on an assessment of a defendant's future behavior, but it does not mean they can revisit that decision throughout an inmate's period of incarceration.

In interpreting a voter initiative, we apply the same principles that govern statutory construction, first giving the words of the statute their ordinary meaning. We must also keep in mind that the statutory language must be construed in the context of the statute as a whole and the overall statutory scheme. (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) Nothing contained in the plain language of the Act expressly authorizes a court to continue or hold in abeyance a petition for resentencing for the purpose of reexamining the inmate's dangerousness. When we examine the procedural framework of the Act, we reach the exact opposite conclusion. It authorizes an inmate to file a single resentencing petition within two years of its effective date, November 7, 2012. These limitations indicate an intent to resolve these petitions within a finite time period. The plain statutory language provides that the court "shall" determine eligibility and "shall" resentence the inmate unless it determines resentencing the petitioner will pose an unreasonable risk of danger to public safety. This language indicates a duty by the court to make these determinations. The drafters of the Act could have created a statutory scheme to allow the court to retain jurisdiction to reevaluate the danger posed periodically or at some future time. They did not do so.

Even when the language of the statute is susceptible of more than one reasonable interpretation, me may " 'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo*, *supra*, 22 Cal.4th at p. 685.) In this case, the voter information guide indicates that the measure will result in a one-time cost related to handling the sentencing petitions—

not periodic evaluations to review an inmate's fitness for resentencing and possible release. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50.)

A court acts in excess of its jurisdiction where, though it has jurisdiction over the subject matter and the parties, it has no power to act "except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) The trial court's order in this matter exceeded its statutory authority, assuming unto itself the authority of a parole board to evaluate and reevaluate the danger Burton posed.

Burton contends that the trial court had inherent authority to grant continuances. We do not disagree that, as the court did several times in this case, the court has authority to continue proceedings to obtain records, transport the inmate, accommodate counsel, etc. This order was not made so that it could control its calendar and conduct a full hearing on the matter. Instead, the court ordered the matter in abeyance for the express purpose of determining whether Burton no longer poses a danger to society. It recommended that Burton receive drug treatment, do certain programming, and disassociate himself from his gang in order to convince it that he was no longer a danger. The court does not have inherent authority to grant a continuance for whatever length of time it deems appropriate to reevaluate an inmate's dangerousness.

Burton chose when to file the petition—he could have waited until November 6, 2014, to file it in order to show the court he had remained disciplinary free during that

time, obtained a GED and/or participated in rehabilitative programs. While it is true that section 1170.126, subdivision (b), does provide that a petition for recall may be made within two years after the effective date of the Act or at a later date upon s showing of good cause, but the trial court did not purport to act under this subdivision. Moreover, we question whether the fact that a court has the power to find good cause to excuse a late petition authorizes it to defer ruling so that it can monitor subsequent conduct. In this case, the court opined that if it had to rule immediately, it would find Burton was a danger.[2] We must conclude that it was required to make a ruling based on its assessment of Burton's dangerousness at the time of the November 7, 2013 hearing.

In addition, a disciplinary record while incarcerated is an important factor for the court to consider in assessing an inmate's dangerousness and is specifically mentioned in section 1170.126, subdivision (g). We are concerned that the trial court did not explicitly address Burton's record of serious and continuing prison disciplinary violations. In light of this record, the trial court could not reasonably find Burton no longer poses a danger to society even if he remained discipline free for the next two years.[3]

---

[2] During oral argument, Burton asserted that the trial court deferred ruling on the petition because it was unsure whether he currently posed a danger. The record does not support this view.

[3] Burton contends that the adoption of Proposition 47 by the voters on November 4, 2014, is significant in that it added section 1170.18, which provides " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) He contends that using this definition the trial court could not find that he poses a danger to public safety. We disagree. Assuming that the definition applies in this case to the determination of

*[footnote continued on next page]*

9

## DISPOSITION

The petition for writ of mandate and/or prohibition is granted.  The Superior Court of Riverside County is directed to vacate any future hearing on Burton's petition or recall of sentence currently scheduled and to issue a new order denying his petition.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

McKINSTER
J.

---

*[footnote continued from previous page]*
dangerousness, the only conclusion that the trial court could reasonably reach in light of his prison record of serious and violent misconduct is that Burton posed a risk of danger to public safety.