Filed 4/15/15  P. v. Turnage CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C075153 |
| Plaintiff and Appellant, | (Super. Ct. Nos. CRF041665, CRF065019) |
| v. | |
| BARRY TURNAGE, | |
| Defendant and Respondent. | |

This is an appeal by the People.  The sole issue is whether a defendant who was originally sentenced to an indeterminate term under the "three strikes" law as it stood prior to November 7, 2012, the operative date of the Three Strikes Reform Act of 2012 (the Act), and whose sentence is vacated on appeal and the matter remanded for resentencing after November 7, is entitled to be resentenced to a determinate term as provided by the Act's amendment to the three strikes law.  The trial court herein concluded defendant was so entitled because this court's having vacated his sentence rendered him an unsentenced defendant within the meaning of the Act and therefore imposed a determinate sentence.

1

For reasons we explain, we conclude that, consistent with the intent of the Act, it is the date upon which the defendant's sentence was originally imposed that determines whether the defendant is entitled to be sentenced under the Act. Because defendant herein was originally sentenced prior to November 7, he was not entitled to be sentenced under the Act. Accordingly, we shall vacate defendant's sentence and remand the matter for resentencing.

## THE ACT

On November 6, 2012, the voters passed the Act and it became operative on November 7, 2012. The Act consisted of two parts, one prospective and the other retrospective. The prospective part amended the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] to provide second-strike sentencing to defendants who were to be sentenced on or after November 7, who had two or more prior serious or violent felony convictions but whose present felony was neither serious nor violent nor were the defendants excluded because they came within the scope of other specified circumstances (§ 667, subd. (e)).[2]

The retrospective part of the Act added section 1170.126 to the Penal Code. This section permitted defendants who were serving indeterminate three-strike sentences imposed prior to November 7, 2012, to petition the trial court for resentencing as second-strike offenders if the felony for which they were serving the indeterminate term was not a serious or violent felony and they were not excluded from such sentencing because they came within the scope of other specified circumstances. Defendants meeting these

---

[1] References to undesignated statutes are to the Penal Code.

[2] Section 667, subdivisions (b)-(i) is the Legislature's version of the three strikes law, and section 1170.12 is the voter initiative version of the three strikes law. The two versions are almost identical. (See *People v. Hazelton* (1996) 14 Cal.4th 101, 103-109.) While our analysis herein is made with reference to the Legislature's version of the law, our analysis is equally applicable to the voter initiative version.

threshold conditions were entitled to be resentenced as second-strike defendants unless the trial court found that they posed an unreasonable risk of danger to the public. (§ 1170.126, subds. (b)-(f).)

## PROCEDURAL HISTORY[3]

In August 2008 defendant Barry Turnage, who had two prior serious felony convictions, was sentenced to an indeterminate term of imprisonment under the three strikes law (§ 667, subds. (b)-(i)) based upon his being convicted by a jury of maliciously placing a false bomb (§ 148.1, subd. (d)), a felony. Defendant appealed, and in a decision filed in 2010 we affirmed his conviction but held that the false bomb offense was not punishable as a felony. We vacated defendant's sentence and remanded the matter for resentencing as a misdemeanor. Because defendant was no longer eligible for sentencing under the three strikes law, we did not address his additional contention that the evidence was insufficient to support one of his prior strike convictions.

In 2010 the California Supreme Court granted the People's petition for review. (*People v. Turnage* (2012) 55 Cal.4th 62, 67.) In August 2012 the Supreme Court affirmed defendant's conviction but reversed our holding that the offense was not punishable as a felony, and remanded the matter to us for further proceedings. (*Id.* at pp. 80-81.) We ordered supplemental briefing, and in May 2013 we filed our opinion, vacating defendant's sentence and remanding to the trial court for a retrial on the allegation that defendant had suffered a 1985 conviction for assault with a deadly weapon. The remittitur issued in July 2013.

In September 2013 a jury found defendant's prior strike conviction allegation true, and in October 2013 the matter came before the trial court for resentencing. After hearing arguments the trial court concluded defendant was entitled to be sentenced

---

[3] We take judicial notice of our records in defendant's prior appeal in case C059887. (Evid. Code, § 452, subd. (d).)

3

pursuant to the Act, reasoning as follows: "The defendant is presently unsentenced. The true finding as to his second strike occurred after the amendment to Penal Code Section 667. The Court finds that under the facts of this case the amended Penal Code Section 667 applies. The defendant's conviction of Penal Code Section 148.1 is not a serious or violent felony. None of the exclusions under [section] 667 apply. Therefore, an indeterminate sentence may not be imposed." The court then imposed a determinate term of six years (the upper term of three years, doubled because of the strike) plus an effective consecutive term of one year four months for a separate case for which defendant was on probation.

## ANALYSIS

"In interpreting a voter initiative, we apply the same principles that govern our construction of a statute. [Citation.] We turn first to the statutory language, giving the words their ordinary meaning. [Citation.] If the statutory language is not ambiguous, then the plain meaning of the language governs. [Citation.] If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved. [Citations.]." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.)

The Act makes clear that a defendant whose original sentence is to be imposed on or after November 7, 2012, and who qualifies for sentencing under amended section 667, subdivision (e) must be sentenced under that section. However, the Act does not address whether, as here, a defendant originally sentenced before November 7, but whose sentence was vacated on appeal and the matter remanded for resentencing after November 7, is in the same unsentenced position as he or she was when originally sentenced. Thus, in such circumstances the Act is ambiguous, and therefore it is appropriate to look to extrinsic evidence, such as the argument contained in the Amendment's ballot pamphlet, to determine voter intent. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 171 (*Yearwood*).)

4

According to the Act's proponents, one of the primary purposes of the Act was to make the punishment fit the crime while guarding public safety. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 171.) As to making the punishment fit the crime, proponents of the Act argued that people who were convicted of such crimes as " 'shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences.' " (*Ibid*.) Public safety was addressed by limiting application of the Act to defendants whose crimes for which they were to be sentenced or had been sentenced were neither serious nor violent felonies, nor did they come within the scope of other specified offenses or circumstances. (§ 667, subd. (e).) Indeed, the voters were expressly assured that dangerous persons would not be released under the Act: "Criminal justice experts and law enforcement leaders carefully crafted [the Act] so that truly dangerous criminals will receive no benefits whatsoever from the reform. Repeat criminals will get life in prison for serious or violent third strike crimes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36 [(the Act)], p. 52.)

"The main difference between the prospective and the retrospective parts of the Act is that the retrospective part of the Act contains an 'escape valve.' " (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1293 (*Kaulick*).) The escape valve provides that even if a defendant meets the threshold requirements for resentencing, namely, that the sentence he was now serving was not for a serious or violent felony and that he did not come within any other of the disqualifying conditions, the court is still authorized to deny resentencing if the court determines that " 'resentencing the [defendant] would pose an unreasonable risk of danger to public safety.' " (*Ibid*.)

The circumstances of *Kaulick*, which we discuss in detail, *post*, demonstrate the need for such an escape valve. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1293.) In 1999, after violently assaulting his neighbor, Barbara S., Kaulick was charged with false imprisonment by violence (§ 236), assault with intent to commit rape (§ 220), and making criminal threats (§ 422), the latter two offenses being violent or serious felonies.

5

(*Kaulick*, at pp. 1286-1287.) It was also alleged that he had two prior serious or violent felony convictions. (*Id.* at p. 1287.) In 2000 a jury convicted him of false imprisonment, which is not a serious or violent felony, but deadlocked on the remaining charges, which were ultimately dismissed at the prosecution's request. (*Id.* at pp. 1287-1288.) The court found the alleged prior serious or violent felony allegations true and sentenced Kaulick to 25 years to life in state prison. (*Ibid.*)

In December 2012, around 12 years after his sentencing, Kaulick filed a petition for resentencing under section 1170.126. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1289.) Kaulick asserted he was entitled to resentencing because his conviction was for false imprisonment, which was neither a serious nor violent felony. He minimized his dangerousness by claiming that his present conviction arose from his effort to retrieve a gold necklace Barbara S. had purportedly stolen from him, and he claimed that his prior convictions arose from a family dispute gone awry for which he had naively accepted a plea bargain. (*Ibid.*) He submitted no evidence whatsoever regarding his behavior while in prison or his current risk of dangerousness. (*Ibid.*) On December 31, 2012, the trial court, without giving notice or opportunity to be heard to the district attorney, granted the petition and resentenced Kaulick to seven years. (*Id.* at pp. 1289-1290, 1296.) Because Kaulick had served more than seven years, he was entitled to immediate release from prison. (*Id.* at p. 1290.)

The district attorney sought and obtained an immediate 30-day stay. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1290.) A review of Kaulick's prison records disclosed that he had been found guilty of serious rules violations—twice for battery on a peace officer (2002, 2005); six times for fighting (2001, 2003, 2007, 2010, 2011, 2012); and once for disrespecting staff (2011), possession of alcohol (2009), being under the influence of alcohol (2008), and destruction of property (2002). (*Ibid.*)

The district attorney also reviewed the facts of Kaulick's present and past convictions, which the defendant had minimized in his petition. (*Kaulick*, s*upra*,

6

215 Cal.App.4th at p. 1290.)  As to Kaulick's claim that his false imprisonment conviction arose out of his efforts to recover a necklace Barbara S. had purportedly stolen from him, he neglected to include evidence from the trial that Barbara S. was helping defendant move out of his apartment when he closed the door, tore her blouse, choked her, threatened to kill her, threw her on his bed, ordered her to remove her clothes, and unbuckled his belt.  (*Id*. at pp. 1286-1287.)  Barbara S. managed to escape by kicking defendant between his legs and fleeing.  (*Id*. at p. 1287.)  As to prior strike convictions purportedly having arisen from a family dispute gone awry, evidence from the preliminary hearing showed that Kaulick arrived at his parents' motor home drunk and demanded a gun from his father.  When his father refused, Kaulick repeatedly punched, strangled, and threatened to kill him.  Kaulick eventually got the gun and kidnapped his parents in their motor home.  After consuming more alcohol, defendant drove back to where the motor home had been parked, released his parents, and drove off in their motor home, leaving them abandoned.  (*Id*. at p. 1287, fn. 3.)

A writ of mandate directed the trial court to vacate its resentencing of Kaulick under the Act and to conduct a new hearing wherein the prosecution was afforded the opportunity to challenge Kaulick's qualification for resentencing under section 1170.126. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1306-1307.)

In the present case, by sentencing defendant pursuant to the prospective part of the Act the trial court permitted defendant to bypass having the trial court determine whether, as in *Kaulick*, facts existed that established he posed an unreasonable risk of danger to public safety based upon any evidence relevant on the issue.  As in *Kaulick*, such a bypass was clearly contrary to the intent of the voters in passing the Act.

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded to the superior court with directions to resentence defendant under the three strikes law as it stood at the time of his original sentencing, which includes the trial court's discretion to strike one or more

7

of his prior strikes if the court determines that he so qualifies.  The judgment is otherwise affirmed.

                                                          RAYE                , P. J.

We concur:

          BUTZ               , J.

          MURRAY          , J.