Filed 5/4/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOEL LOPEZ,<br><br>    Defendant and Appellant. | H039896<br>(Santa Clara County<br> Super. Ct. No. 202265) |


Defendant Joel Lopez is currently serving a "Three Strikes" sentence of 25 years to life for a 1998 conviction for possession of methamphetamine for sale (Health & Saf. Code, § 11378). In 2013, he filed a petition for recall of his sentence under Penal Code section 1170.126[1] seeking resentencing to a determinate term. Although defendant was "eligible" for resentencing, the superior court exercised its discretion under section 1170.126 to refuse to resentence him because "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

On appeal, he contends that (1) his trial counsel was prejudicially deficient in failing to request a jury trial on his petition, to which he claims he was entitled, (2) he was entitled to resentencing because section 1170.126 establishes a presumption that he is entitled to resentencing and this presumption was not rebutted by the evidence before the superior court, and (3) a remand is required because Proposition 47, which enacted

_____

[1]    Subsequent statutory references are to the Penal Code unless otherwise specified.

section 1170.18 in November 2014, changed the definition of "unreasonable risk of danger to public safety" as that phrase is used in section 1170.126. We conclude that defendant was not entitled to a jury trial, the superior court did not abuse its discretion in denying resentencing, and Proposition 47 did not change the definition of "unreasonable risk of danger to public safety" as that phrase is used in section 1170.126.

## I. Background

Defendant has had a substance abuse problem since he was 14 years old. He completed three substance abuse treatment programs between 1986 and 1997, but his substance abuse continued unabated. He was convicted of theft in 1988 and incurred two burglary convictions, his two strikes, in 1989. Defendant has a long history of violence. During one of the 1989 burglaries, the victim awoke to find defendant trying to steal his stereo. Defendant tried to "gouge the victim's eyes," but fled when the victim escaped his grasp. Also in 1989, when the police contacted defendant after it was reported that "he was challenging passersby to fight," defendant assaulted the police. While serving a jail term, he escaped by force. In 1992, while driving a stolen car and trying to evade the police, defendant "rammed an occupied police car." In 1996, defendant assaulted and injured his girlfriend. When the police arrived, he threatened and assaulted them and damaged their patrol car. In addition to his violent offenses, defendant was convicted of driving under the influence in 1989 and again in 1993. He has served multiple prison terms, and his performance on parole has been dismal. He lied to his parole officer, made no effort to obtain employment, and continued to use drugs and commit crimes while on parole.

Defendant was on parole with a warrant out for his arrest in August 1997 when he was stopped by the police. Defendant had been seen dropping an object on the ground after seeing a police officer. He provided a false name to the officer. The object he had dropped was retrieved, and it was found to be a wallet containing five packages of

2

methamphetamine and defendant's California Identification Card.  He was arrested and found to be both drunk and under the influence of methamphetamine.  Defendant was convicted of possession of methamphetamine for sale and sentenced to 25 years to life in 1998.

Since 1998, defendant has spent most of his time in the Secured Housing Unit (SHU) at Pelican Bay State Prison due to his involvement in the Northern Structure prison gang.  He has been disciplined for battery on a peace officer and mutual combat in 2000, possession of inmate-manufactured alcohol in 2003 and 2004, possession of contraband in 2003, possession of a deadly weapon in 2010, and gang activity in 2012.  Defendant was diagnosed with lupus, an incurable autoimmune disease, in 2001.

In January 2013, 43-year-old defendant filed a petition seeking a finding that he was eligible for "possible resentencing" under section 1170.126.  The court noted that he appeared to be eligible and appointed counsel for defendant.  The prosecution conceded that defendant was eligible, but it opposed resentencing on the ground that it would pose an unreasonable risk of danger to public safety.  At the June 2013 hearing, the court observed that defendant's "conduct has not changed the whole time he's been in custody."  He "continues to be a threat."  The court found that "defendant, if he were resentenced, would be a danger to the community, would be an unreasonable risk and would pose such a risk."  It denied defendant's petition.  Defendant timely filed a notice of appeal.

## II.  Discussion

### A.  No Right to Jury Trial

Defendant claims that his trial counsel was prejudicially deficient in failing to request a jury trial on his petition.  He contends that *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279 (*Kaulick*), which held that the Sixth Amendment does not apply to section 1170.126 petitions, was "wrongly decided."  We disagree.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, at p. 490, italics added.) The defendant in *Kaulick* contended that the prosecution was required to prove "unreasonable risk of danger" under section 1170.126, subdivision (f) beyond a reasonable doubt because this finding increased the statutory maximum for his offense. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1301.) He argued that, once he was found eligible for resentencing under section 1170.126, the "statutory maximum" for his offense was a determinate term rather than the Three Strikes life term to which he had been originally sentenced. (*Kaulick*, at p. 1302.)

The Second District Court of Appeal rejected Kaulick's contention on the ground that the statutory maximum for his offense was always a life sentence. It first found that there was no presumption under section 1170.126 that an eligible petitioner was entitled to resentencing. Instead, "unreasonable risk of danger" was a "hurdle which must be crossed" before a petitioner becomes entitled to resentencing. Thus, a petitioner is statutorily subject to his or her Three Strikes term until that hurdle is crossed, making the Three Strikes term the statutory maximum for Sixth Amendment purposes. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1303.) Since the Sixth Amendment did not apply to the "unreasonable risk of danger" finding, the standard of proof was not beyond a reasonable doubt. (*Kaulick*, at p. 1303.)

The Second District found support for its analysis in the United States Supreme Court's decision in *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*). In *Dillon*, the court considered whether a two-step sentence modification procedure implicated the Sixth Amendment. (*Dillon*, at pp. 826-829.) The first step of the procedure was a determination of eligibility and the amount of the potential reduction. If the prisoner was eligible, the second step involved a determination of whether a reduction should be

4

ordered. (*Dillon*, at pp. 826-827.) The court held that such a procedure did not implicate the Sixth Amendment because it did not lead to a "plenary resentencing" proceeding. (*Dillon*, at p. 827.) Since the original sentence remained statutorily authorized, the two-step procedure did not involve a change to the statutory maximum for the offense and therefore did not implicate the Sixth Amendment. (*Dillon*, at pp. 828-829.)

*Dillon* supports the Second District's conclusion in *Kaulick* that section 1170.126 does not implicate the Sixth Amendment. Defendant claims that *Dillon* is inapplicable because section 1170.126 establishes a presumption that he is entitled to resentencing. To support his presumption contention, defendant relies on *People v. Guinn* (1994) 28 Cal.App.4th 1130 (*Guinn*). The *Guinn* court held, based on a statutory construction analysis, that section 190.5 established a presumption of life without parole as the sentence for a 16- or 17-year-old minor convicted of a special circumstance murder. (*Guinn*, at pp. 1141-1142.) Section 190.5 provides that the penalty "shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life." (§ 190.5, subd. (b).) In *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), the California Supreme Court disapproved *Guinn* and disagreed with its holding that the language of section 190.5 established a presumption. (*Gutierrez*, at p. 1371.) Instead, the court found that section 190.5's language was ambiguous and resolved the ambiguity based on the avoidance of possible unconstitutionality. (*Gutierrez*, at pp. 1372-1373.)

Defendant's *Guinn*-based claim is that the structure of section 190.5 is similar to the structure of section 1170.126, subdivision (f) and therefore a presumption should apply. However, the California Supreme Court's decision in *Gutierrez* disapproved of the *Guinn* court's reliance on the structure of section 190.5 to support a conclusion that a presumption should apply. The language and structure of section 1170.126 is not ambiguous with respect to whether a presumption should apply. The statute's heavy emphasis on the court's duty to evaluate whether "resentencing" would pose an

5

unreasonable risk of danger to public safety necessarily implies that the court's finding on that issue is a *predicate* to the petitioner's entitlement to resentencing rather than an issue that comes up only as a possible rebuttal of a *presumption*.

We agree with the Second District's holding in *Kaulick* and its reliance on *Dillon*. A petition for resentencing under section 1170.126 does not implicate the Sixth Amendment because it does not establish a presumption that an eligible petitioner is entitled to resentencing. Since the original Three Strikes sentence remains the statutory maximum for the offense, no right to a jury trial arises under the Sixth Amendment.

## B. No Abuse of Discretion

Defendant claims that the superior court abused its discretion in denying him resentencing because he has not been violent during his last 13 years in prison, suffers from lupus, and has reasonable post-release plans.[2] His view of the record is insupportable.

Defendant has a long history of violence against both the police and others, and his prison discipline record reflects that he has not reformed himself. Although he has not been disciplined for actual violence since 2000, he was found in possession of a deadly weapon in prison in 2010. In addition, he has been involved in prison gang activity for many years and was disciplined for such activity as recently as 2012. Furthermore, defendant's lack of recent violence in the highly controlled environment of the SHU at Pelican Bay State Prison is hardly a measure of the risk that he will be violent

---

[2] Defendant also maintains that the superior court could not deny his petition unless it made a finding that he was "outside the 'spirit' of" section 1170.126 and expressly identified the basis for its "unreasonable risk of danger" finding. He identifies no statutory basis for this claim. Section 1170.126 precludes the granting of a petition if the petitioner poses an "unreasonable risk of danger" and commits that determination to the superior court's discretion without any requirement of express findings. We reject defendant's unfounded claim.

if released.  When he was free in the community, defendant's violence was undeterred by jail and prison terms.  He tried to gouge out a burglary victim's eyes, challenged strangers to fight, threatened and assaulted police officers, rammed his car into an occupied police car, assaulted and injured his girlfriend, drove under the influence, continued his substance abuse despite treatment, and made no effort to obtain employment.  The record contains no indication that his medical condition limits his potential for violence.

On this record, we find no abuse of discretion in the superior court's finding that resentencing defendant to a determinate term, which would result in his immediate release, would pose an unreasonable risk of danger to public safety.


**C.  Proposition 47's Definition of "Unreasonable Risk of Danger to Public Safety"**

Section 1170.126 was enacted by the voters in November 2012 as part of the Three Strikes Reform Act (the Reform Act).  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167.)  As noted above, subdivision (f) of section 1170.126 erects a hurdle that precludes resentencing if "the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." Section 1170.126 does not define "an unreasonable risk of danger to public safety," but it does provide a list of nonexclusive criteria for the court to consider in making this determination.  (§ 1170.126, subd. (g).)

Proposition 47, the Safe Neighborhoods and Schools Act (the SNS Act) was enacted by the voters in November 2014.  The Legislative Analyst described Proposition 47 as having three aspects:  "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*.  The measure also allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences.  In addition, the measure requires any state savings that result from the measure be spent to support [certain services]."  (Voter Information

7

Guide, Gen. Elect. (Nov. 4, 2014) analysis by the Legislative Analyst, p. 35, italics added.) Nowhere in Proposition 47 or the ballot materials provided to the voters regarding it was there any reference to section 1170.126 or the Reform Act. (Voter Information Guide, Gen. Elect. (Nov. 4, 2014) pp. 34-39, 70-74.)

Proposition 47 established procedures for applications for reduced sentences for specified nonserious and nonviolent property and drug crimes by adding section 1170.18 to the Penal Code. Subdivision (a) of section 1170.18 permits persons convicted of the specified nonserious, nonviolent property and drug felonies to file petitions "request[ing] resentencing . . . ." (§ 1170.18, subd. (a).) Subdivision (b) of section 1170.18 provides that a court that receives such a petition shall resentence the petitioner "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." Like section 1170.126, subdivision (g), section 1170.18, subdivision (b) provides that, "[i]n exercising its discretion, the court may consider" the petitioner's criminal history, disciplinary record while incarcerated, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Defendant relies on subdivision (c) of section 1170.18. It provides: "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit *a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667*." (§ 1170.18, subd. (c), italics added.) The very limited list of "violent felony" offenses set forth in section 667, subdivision (e)(2)(C)(iv) reads: "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶] (II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined

8

by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

Defendant contends that the very restrictive definition of " 'unreasonable risk of danger to public safety' " set forth in subdivision (c) of section 1170.18 now controls the meaning of that phrase as it is used in section 1170.126.[3] We disagree.

"We recognize the basic principle of statutory and constitutional construction which mandates that courts, in construing a measure, not undertake to rewrite its unambiguous language. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348, 158 Cal.Rptr. 350, 599 P.2d 656.) That rule is not applied, however, when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body." (*People v. Skinner* (1985) 39 Cal.3d 765, 775 (*Skinner*).) "Whether the use of [a particular word] is, in fact, a drafting error can only be determined by reference to the purpose of the section and the intent of the electorate in adopting it." (*Skinner*, at p. 776.)

We believe that the word "Code" was "erroneously used" in section 1170.18, subdivision (c) rather than the word "Act," to refer to the SNS Act, and therefore this

---

[3]     This issue is currently pending in the California Supreme Court in *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.

error is properly subjected to "judicial correction." The "purpose" of section 1170.18 and "the intent of the electorate" in enacting it unambiguously demonstrate that the voters did not intend to alter the Reform Act or section 1170.126 in any way or to require the resentencing of any person serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes.

First, because Proposition 47's ballot materials and proposed statutory language contained nothing whatsoever to suggest that Proposition 47 would have any impact on the resentencing of anyone who was serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes, it is inconceivable that voters intended for subdivision (c) of section 1170.18 to severely restrict the ability of a court to reject a resentencing petition under the Reform Act by a person convicted of crimes *other* than one of the specified property or drug crimes and whom the court considered dangerous. The Proposition 47 ballot materials contained no mention of such a possible consequence and the only hint was the use of the word "Code" rather than "Act" in an obscure subdivision of the lengthy proposed act. The ballot materials repeatedly emphasized that the resentencing provisions of Proposition 47, which were contained in section 1170.18, were *limited* to *only* those persons serving sentences for the specified nonserious, nonviolent property or drug crimes.

Second, the timing of Proposition 47 makes an intent to alter the Reform Act illogical. The Reform Act required petitions to be brought within two years unless a court concluded that there was good cause for a late-filed petition. (§ 1170.126, subd. (b).) By the time Proposition 47 took effect, only two days remained in the two-year period for filing a Reform Act petition. No rational voter could have intended to change the rules for Reform Act petitions at the last moment, when nearly all petitions would already have been filed and most of them adjudicated.

Third, the structure and content of section 1170.18 is inconsistent with an intent to apply section 1170.18, subdivision (c)'s definition throughout the entire Penal Code.

10

Subdivision (n) of section 1170.18 provides: "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling *within the purview of this act*." (§ 1170.18, subd. (n), italics added.)  Applying section 1170.18, subdivision (c)'s definition throughout the Penal Code would necessarily "diminish or abrogate the finality of judgments" in cases, like those subject to the Reform Act, that do not fall "within the purview of" Proposition 47.  Defendant's petition under the Reform Act, like most such petitions, seeks to abrogate the finality of a Three Strikes judgment in a case that does not involve one of the specified nonserious, nonviolent property or drug crimes.  Thus, under section 1170.18, subdivision (n), "[n]othing" in section 1170.18 was intended to apply to his petition.  In addition, the wording of section 1170.18, subdivision (c) is itself inconsistent with an intent to apply it "throughout" the entire Penal Code.  It refers to "petitioners" and defines a phrase that appears in only two sections of the Penal Code, section 1170.18 and section 1170.126.  If the voters had intended to apply this definition to Reform Act petitions, this phrasing would have been the most roundabout means of doing so.  Since the ballot materials made no mention of the Reform Act, we will not ascribe such unreasonable conduct to the voters.

In sum, section 1170.18, subdivision (c) contains a drafting error that must be judicially corrected.  The word "Code" must be read as "Act."  Under this corrected reading of the statute, there is no foundation for defendant's contention.

## III.  Disposition

The order is affirmed.

11

_____

Mihara, J.

WE CONCUR:


_____

Elia, Acting P. J.



_____

Bamattre-Manoukian, J.




People v. Joel Lopez
H039896

12

Trial Court: Santa Clara County Superior Court

Trial Judge: Honorable Rene Navarro

Attorney for Defendant and Appellant: Patrick McKenna
Under Appointment by the Sixth
District Appellate Program

Attorneys for Plaintiff and Respondent: Kamala D. Harris
Attorney General of California

Dane R. Gillette
Chief Assistant Attorney General

Gerald A. Engler
Chief Assistant Attorney General

Jeffrey M. Laurence
Supervising Deputy Attorney General

Christopher J. Wei
Deputy Attorney General

Aileen Bunney
Deputy Attorney General

People v. Joel Lopez
H039896

13