Filed 7/9/15  P. v. Landry CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040337 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 186848) |
| v. | |
| ERNEST LANDRY, | |
| Defendant and Appellant. | |

Defendant Ernest Landry appeals the denial of a petition to recall his sentence under Penal Code section 1170.126.[1]  He argues that the trial court erred by denying his motion for a jury to determine whether "resentencing [him] would pose an unreasonable risk of danger to public safety" (*id*., subd. (f)), and by failing to assign the burden of proving that risk to the People.  He also seeks a remand in light of recently-enacted Proposition 47 (the Safe Neighborhoods and Schools Act).  We conclude (1) the constitutional right to a jury trial does not attach to the dangerousness inquiry under subdivision (f); (2) no prejudicial error resulted here from the trial court's failure to assign the burden of proof to the People; and (3) the subdivision (f) dangerousness inquiry is unaffected by the Safe Neighborhoods and Schools Act.  In light of these conclusions, we will affirm the trial court's denial of defendant's petition.

---

[1]  Unspecified statutory references are to the Penal Code.  Unspecified subdivisions refer to section 1170.126.

1

# I.  TRIAL COURT PROCEEDINGS

Defendant is serving a 27-year-to-life sentence on his 1996 conviction for transportation or sale of a substance falsely represented to be a controlled substance ("bunk cocaine," Health & Saf. Code, § 11355), with prior strike convictions for assault with personal use of a weapon (§ 245), robbery (§ 211), and shooting at an occupied building (§ 246).  In November 2012, defendant filed a petition for writ of habeas corpus seeking to be resentenced under section 1170.126, part of the Three Strikes Reform Act of 2012 (the Reform Act).[2]

The trial court construed the petition as brought directly under section 1170.126, appointed counsel, and invited briefing.  It noted the absence of any section 667, subdivision (e)(2)(C) disqualifying enhancements on the third strike conviction so that defendant appeared to be eligible to request resentencing as a second strike offender.

The People opposed the petition under subdivision (f), asserting that resentencing defendant would pose an unreasonable risk of danger to public safety based on defendant's criminal history, conduct while incarcerated, and current affiliation with a gang.  The written opposition included excerpts from defendant's prison records, and several reporter's transcripts from preliminary examination and sentencing hearings between 1984 and 1997.

---

[2]  The Reform Act amended sections 667 and 1170.12 and added section 1170.126.  Section 1170.126 authorizes persons serving a third strike indeterminate life sentence (§ 667, subd. (e)(2)) for a nonserious or nonviolent conviction to file "a petition for a recall of sentence" (§ 1170.126, subd. (b)).  A prisoner qualifies for resentencing as a second-strike offender by meeting certain eligibility requirements related to the nature of his prior convictions.  (*Id.*, subd. (e).)  Subdivision (f) directs the trial court to resentence a prisoner who meets the subdivision (e) requirements "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  Subdivision (g) directs the court's discretion to the prisoner's criminal conviction history, disciplinary record and record of rehabilitation while incarcerated, and other evidence that the court deems relevant to the dangerousness inquiry.  (*Id.*, subd. (g).)

Defendant countered that the prosecution had not met its burden to show that resentencing would pose an unreasonable risk of danger to public safety. Nor had the People overcome what defendant argued was a statutory presumption in favor of resentencing. In a separate filing, defendant moved the court to grant the petition outright or, alternatively, to order a jury trial to decide the dangerousness question. That motion was denied.

At the subdivision (f) dangerousness hearing, defendant called an expert in California prison operations and security. The witness reviewed prison documents related to defendant's 2007 conviction for assault on a corrections officer (§ 4501.5) at Salinas Valley State Prison. Some documents showed that the assault occurred in his cell when defendant failed to give up his food tray, but other documents described the assault as occurring during a random cell search. A random cell search does not involve handcuffing the inmate, but if a food tray were considered to be a potential weapon, proper procedure would be to handcuff the inmate before entering his cell. Defendant was not handcuffed. The witness was aware of reported incidents of unprovoked assaults by corrections officers at the Salinas Valley State Prison and an investigative review for similar conduct at that prison during the timeframe of defendant's assault. The witness explained that a gang dropout functions as a loner in prison, and that dropout status can compromise the prisoner's safety within the inmate population.

Defendant testified to being a former Crips gang member, but he left the gang in 1987, even though he was identified as a gang member in the San Jose Police Department's data base in 1996 and even though the prison considers him to be affiliated with that gang. He acknowledged several fights with other inmates during his incarceration, some related to his dropout status. Defendant testified that he usually was not the aggressor, but he did not disclose that fact to prison officials because he did not want to be a snitch.

3

Defendant explained that Salinas Valley State Prison was notorious for corrupt correctional officers, and he described the 2006 incident resulting in a felony conviction the following year as one such unprovoked attack, particularly because his building was under lockdown so corrections officers should not have accessed his cell without first handcuffing him. He pleaded guilty to that offense only because the incident report did not support his position, and he was tired of traveling back to Salinas to make numerous court appearances. He also testified that the 1985 shooting into an occupied dwelling was accidental, even though that was not reflected in the police report.

Defendant described himself as selfish with an uncontrolled mind in his youth, but he changed when he became a Buddhist in 2001. Through Buddhism, he learned to control his mind and make conscious decisions. He had a relationship with his six children, and would live with his wife, daughter, and granddaughter, and continue practicing Buddhism if released.

The court denied defendant's resentencing petition, detailing a 25-year criminal history and defendant's lengthy prison record, including "repetitive assaultive misconduct."

## II. DISCUSSION

### A. THE RIGHT TO A JURY TRIAL DOES NOT ATTACH TO THE SUBDIVISION (F) DANGEROUSNESS INQUIRY

Relying on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), defendant argues that he has a right under the Sixth and Fourteenth Amendments to the United States Constitution to have a jury decide beyond a reasonable doubt whether resentencing would endanger public safety under subdivision (f). In *Apprendi*, the United States Supreme Court held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, at p. 490.) Applying *Apprendi* to California's determinate

4

sentencing law, the high court held in *Cunningham* that, by placing sentencing-elevating factfinding within the judge's purview, the law violated a defendant's right to trial by jury. (*Cunningham*, at p. 288.) In defendant's view, by virtue of the word "shall," subdivision (f) establishes a "presumed" "normative" second-strike sentence akin to the prescribed statutory maximum sentence in *Apprendi*, making unreasonable risk of danger to public safety a sentencing-enhancing factor that must be proven to a jury.

Defendant's argument was rejected in *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279. *Kaulick* addressed the standard of proof applicable to the subdivision (f) dangerousness inquiry. The *Kaulick* court rejected the argument that beyond a reasonable doubt was the applicable standard, concluding that a finding of dangerousness is not a "factor which justifies enhancing a defendant's sentence beyond a *statutorily presumed second strike sentence*." (*Id.* at p. 1301, italics added.) Like defendant, Kaulick argued that once he was eligible for resentencing under subdivision (e), he "was subject *only* to a second strike sentence, *unless* the prosecution established dangerousness." (*Kaulick,* at p. 1302.) The court disagreed and concluded that a third strike indeterminate sentence was *not* recalled under subdivision (f) by virtue of meeting subdivision (e)'s eligibility requirements. (*Kaulick,* at p. 1303.) *Kaulick* examined the language and structure of subdivision (f)-" 'shall be resentenced' to a second strike sentence 'unless the court … determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety' "-to conclude that dangerousness under subdivision (f) is a threshold hurdle to be surmounted *before* a prisoner can be resentenced. (*Kaulick*, at pp. 1302-1303.) Contrary to defendant's argument, the mandatory "shall" does not establish a "presumed" or "normative" maximum second strike sentence making the dangerousness inquiry a sentence-enhancing factor. (*Id.* at p. 1299, fn. 23.)

*Kaulick* also looked to *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*), in which a defendant's Sixth Amendment right to have essential facts found by a jury

5

beyond a reasonable doubt did not apply to downward sentence modifications prompted by intervening law. Under federal law, the Federal Sentencing Commission is charged with promulgating sentencing guidelines and issuing policy statements regarding those guidelines. When the Commission reduces a sentencing range for a given offense, it must determine "in what circumstances and by what amount the sentences … for the offense may be reduced." (28 U.S.C. § 994(u).) A district court may reduce an otherwise final sentence only if the reduction is consistent with applicable policy (18 U.S.C. § 3582(c)), and the policy statement at issue in *Dillon* foreclosed a court from reducing a sentence below the minimum amended guideline range. (*Dillon*, at pp. 821-822.)

The prisoner in *Dillon* equated a sentencing modification under 18 U.S.C. § 3582(c) to the type of sentencing scheme struck under *Apprendi*, implicating the Sixth Amendment right to a jury unless the policy statement were deemed discretionary. Disagreeing, the Supreme Court viewed section 3582(c) not as a sentencing or resentencing proceeding, but rather as a " 'modif[ication of] a term of imprisonment,' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission.' " (*Dillon*, *supra*, 560 U.S. at p. 825.) In other words, Congress had "authorize[d] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." (*Id*. at p. 826.) *Dillon* observed that the sentencing modification proceedings were not constitutionally compelled, nor was retroactivity constitutionally mandated. To the contrary, the statute "represent[ed] a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the [amended] Guidelines." (*Id*. at p. 828.)

*Kaulick* applied the reasoning in *Dillon* to resentencing applications under section 1170.126. Retroactive application of the Reform Act to inmates serving third strike sentences is not constitutionally mandated. Resentencing under section 1170.126 is an act of lenity by the electorate, and the eligibility factors for that resentencing, including

6

the dangerousness determination, are not encompassed by the Sixth Amendment. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1304-1305.)

We embrace *Kaulick*'s reasoning and apply it here. We conclude that unreasonable risk of danger to public safety is not a sentence-enhancing factor triggering the constitutional right to a jury trial.

**B.     NO PREJUDICE RESULTED FROM THE TRIAL COURT'S FAILURE TO ASSIGN THE BURDEN OF PROOF**

Defendant argues that the trial court committed reversible error amounting to a due process violation by not assigning the burden of proving dangerousness to the People. At the start of the subdivision (f) hearing, defendant argued that the People had the burden of proving risk of danger to public safety and should be required to present their evidence first. The People countered that, in the event they bore the burden of proof, they had met that burden with their written opposition and supporting documents.[3] The court responded: "Both [defendant] and the People have, obviously, the right to argue their respective positions as to whether or not [defendant] is or is not an immediate or present danger to the community if released. [¶] As to who has the burden, the Court feels that the burden lies with the Court in that the Court has to exercise its discretion based upon the arguments of counsel, all the records and files, the testimony, the evidence, etc., as to whether or not in the Court's discretion the relief should be granted or the relief should be denied. And it's not a question of who has the burden of proving that issue. That issue is for the sound discretion of the court."

"Burden of proof" is defined as "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of … the court." (Evid. Code, § 115.) "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief … ." (Evid.

_____

[3] The People assumed the burden of proof in their written opposition to the recall petition, observing that section 1170.126 was unclear on that point.

Code, § 500.) In defendant's view, subdivision (f) places the burden of proving unreasonable risk of dangerousness on the People "[g]iven the presumption that a two strikes sentence is the normative term … ." Although a presumption may dictate who bears the burden of proof (Evid. Code, §§ 605, 606), subdivision (f) does not create the presumption of a second strike sentence. As we have already explained, the statute requires the court to resentence defendant if and only if the dangerousness question is resolved in defendant's favor.

In *Kaulick*, *supra*, 215 Cal.App.4th 1279, the court noted the parties' agreement that the subdivision (f) burden of proof rests with the People (*id.* at p. 1301, fn. 25), and concluded that the People bore that burden of establishing dangerousness by a preponderance of the evidence. (*Id*. at p. 1305.) Preponderance of the evidence means "evidence that has more convincing force than that opposed to it." (*Glage v. Hawes Firearms Co*. (1990) 226 Cal.App.3d 314, 324.) The standard is met when "evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed." (*People v. Miller* (1916) 171 Cal. 649, 652.) In light of that standard, the burden of proof becomes relevant to the determination only if the evidence is evenly balanced in the mind of the fact finder. (*Id*. at p. 654.)

It is clear from the record that the trial court did not view the relevant facts as supporting both positions equally; it therefore follows that the People proved those facts by a preponderance. The court described defendant's 25-year criminal record, established by the People, including robbery, first degree burglary, assault with a deadly weapon, discharging a firearm into an inhabited dwelling house, and assault on a correctional officer, as "unbelievably extensive" and "serious." Relying on prison disciplinary records provided by the People, the court cited assaultive or aggressive behavior in 1998, 1999, 2001, 2002, 2003, 2004, 2006, and 2010. The court stated it was

8

not persuaded by what it described as "excuses" for defendant's history of "aggressive" and "repetitive assaultive misconduct" while in custody.

The Reform Act left the dangerousness determination to the court's discretion, considering defendant's criminal history, his conduct while incarcerated, and any other relevant evidence. (§ 1170.126, subd. (g); *People v. Payne*, *supra*, 232 Cal.App.4th at p. 591 ["The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion."].) Even though the trial court here failed to assign the burden of proof, that failure does not amount to prejudicial error or a due process violation because the People met their obligation under Evidence Code section 115 of proving the facts on which the court based its dangerousness determination.

## C.    PROPOSITION 47 DOES NOT IMPACT SUBDIVISION (F)

On November 4, 2014, voters enacted Proposition 47, the Safe Neighborhoods and Schools Act. Proposition 47 reclassified certain felony drug and theft related offenses as misdemeanors and created a new resentencing provision-section 1170.18-for persons serving felony sentences for the reclassified offenses. (§ 1170.18, subd. (a).) Similar to section 1170.126, newly-enacted section 1170.18 requires the trial court to determine whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).) But unlike section 1170.126, section 1170.18 provides a restrictive definition of "unreasonable risk of danger to public safety." Section 1170.18, subdivision (c) reads: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."[4]

---

[4]  Section 667, subdivision (e)(2)(C)(iv) lists eight felonies or classes of felonies: "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶]  (II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years

Defendant argues that section 1170.18, subdivision (c)'s introductory clause-"As used throughout this Code"-incorporates that subdivision's definition of "unreasonable risk of danger to public safety" (the eight categories of felonies listed in footnote 4) into section 1170.126 proceedings and that a remand is warranted for the trial court to revisit its dangerousness inquiry in light of the new definition. The People counter that Proposition 47's definition of "unreasonable risk of danger to public safety" applies only to petitioners seeking a recall of their sentence under that initiative, and, even if the definition were to apply to Reform Act resentencing petitions, Proposition 47's definition of "unreasonable risk of danger to public safety" would not apply retroactively to defendant.[5]

In our view, the drafters of Proposition 47, and the electorate who approved it, did not intend that initiative to rework the procedures established by the electorate only two years earlier to resentence Three Strikes offenders. The Legislative Analyst wrote in the Voter Information Guide that Proposition 47 was intended to reduce penalties for "certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors," and identified those crimes as "Grand Theft," "Shoplifting," "Receiving

younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. "(V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

[5] The California Supreme Court has granted review in two cases addressing these arguments. *People v. Valencia* (2014) 232 Cal. App.4th 514, review granted February 18, 2015, S223825, held that Proposition 47's "unreasonable risk of danger to public safety" definition does not apply to the Reform Act, and *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted February 18, 2015, S223676, held that definition does not apply retroactively to Reform Act resentencing petitions.

10

Stolen Property," "Writing Bad Checks," "Check Forgery," and "Drug Possession." (Voter Information Guide, Gen. Elect. (Nov. 4, 2014) analysis by the Legislative Analyst, pp. 35-36.) Indeed, the analysis explained that the initiative "allows offenders currently serving felony sentences *for the above crimes* to apply to have their felony sentences reduced to misdemeanor sentences," and that "a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (*Id*. at p. 36, italics added.) The proponents of Proposition 47 similarly argued the initiative "[s]tops wasting prison space on petty crimes and focuses law enforcement resources on violent and serious crime by changing low-level, nonviolent crimes such as simple drug possession and petty theft from felonies to misdemeanors." (*Id*. at p. 38, argument in favor of Proposition 47.) There is no mention of the passage of 2012's Three Strikes Reform Act, much less any change to that act, anywhere in the Voter Information Guide.

A literal application of Proposition 47's definition of "unreasonable risk of danger to public safety" would undermine section 1170.126's express directive to the trial court to consider "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(3).) A literal application would limit the court's inquiry to whether a petitioning inmate could be deemed to pose a risk of committing one of the select offenses listed in section 677, subdivision (e)(2)(C)(iv). But risk of danger to public safety encompasses far more sweeping conduct than those enumerated offenses. Indeed, the trial court would be unable to consider an inmate's risk of committing other crimes that endanger the public safety, such as driving while intoxicated, arson, or armed robbery. Such a radical reduction of the trial court's expansive discretion to assess the risk of danger of resentencing a Three Strikes offender plainly was not contemplated by Proposition 47.

11

We conclude that Proposition 47's definition of "unreasonable risk of danger to public safety" is limited to that initiative.  A literal reading of Proposition 47 would result in consequences unintended by the drafters of the initiative or the voters.  (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033 ["The literal language of a statute does not prevail if it conflicts with the lawmakers' intent."]; *People v. Lopez* (2015) 236 Cal.App.4th 518, 527 ["The 'purpose' of section 1170.18 and 'the intent of the electorate' in enacting it unambiguously demonstrate that the voters did not intend to alter the Reform Act or section 1170.126 in any way or to require the resentencing of any person serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes."].)

In light of our conclusion, we do not reach the People's retroactivity argument.

### III.  DISPOSITION

The order denying defendant's resentencing petition is affirmed.

_____

Grover, J.

**I CONCUR.**


_____

Bamattre-Manoukian, Acting P. J.

*People v. Landry*
**H040337**

**Mihara, J., Concurring in the Judgment.**

I concur in the judgment.  On the Proposition 47 issue, I continue to adhere to my analysis in *People v. Lopez* (2015) 236 Cal.App.4th 518.

_____

Mihara, J.

*People v. Landry*
H040337